**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

No. 20-23527-civ-WILLIAMS/TORRES

RICHARD M. BUSH, Individually and
On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

BLINK CHARGING COMPANY, MICHAEL
D. FARKAS, and MICHAEL P. RAMA,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION, AND INCORPORATED
MEMORANDUM OF LAW**

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
Dean Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
bszydlo@pomlaw.com
vshteyn@pomlaw.com
dferrogari@pomlaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein (262161)
Lucas E. Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

Peter A. Shaeffer (*pro hac vice* app. pending)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
petersh@hbsslaw.com

*Co-Lead Counsel for Plaintiffs and the Class*
[*Additional counsel on signature page*]

**<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF LAW ............................................................................................... 1

I.     INTRODUCTION ............................................................................................... 1

II.    OVERVIEW OF THE LITIGATION ................................................................ 3

III.   STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 3

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............................ 4

      A.    Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement Class ............................................................................................................... 4

      B.    The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel ........................................................................................ 6

      C.    The Settlement Relief is Adequate ...................................................................... 6

             1.    The Settlement Amount is Within the Range of Reasonableness.............. 6

             2.    The Costs, Risks, and Delay of Trial and Appeal...................................... 7

             3.    Other Factors Established by Rule 23(e)(2)(C) Support Final Approval ... 9

      D.    All Settlement Class Members Are Treated Equitably........................................ 11

      E.    The Remaining Eleventh Circuit Factors Strongly Support Final Approval........ 12

             1.    The Stage of Proceedings at Which Settlement was Achieved ................ 12

             2.    The Substance and Amount of Opposition to the Settlement Favors Final Approval of the Settlement ................................................................ 13

V.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 13

VI.   THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ................... 13

VII.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.................................. 14

VIII. CONCLUSION............................................................................................... 15

LOCAL RULE 7.1(a)(3) CERTIFICATION .............................................................................. 16

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
    2002 WL 1162422 (S.D. Fla. May 7, 2002) ........................................................13

*Atkinson v. Wal-Mart Stores, Inc.*,
    2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)........................................................10

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...............................................................4, 6, 7, 12

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ................................................8, 15

*City of Omaha Police & Fire Ret Sys. v. LHC Grp.*,
    2015 WL 965693 (W.D. La. Mar. 3, 2015) ........................................................15

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ......................................................11

*Francisco v. Numismatic Guar. Corp. of Am.*,
    2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ....................................................12, 13

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
    2019 WL 2249941 (S.D. Fla. May 24, 2019) ......................................................12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)..................................................................................................8

*Hutton ex rel. MasTec, Inc. v. Mas*,
    2006 WL 8430549 (S.D. Fla. Dec. 12, 2006) ......................................................12

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
    *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ................................................................................9

*In re Catalina Mktg. Corp. Sec. Litig.*,
    2007 WL 9723529 (M.D. Fla. July 9, 2007) ..................................................14, 15

*In re Checking Acct. Overdraft Litig.*,
    2013 WL 11319392 (S.D. Fla. Aug. 5, 2013).........................................................7

*In re Checking Acct. Overdraft Litig.*,
    2014 WL 11370115 (S.D. Fla. Jan. 6, 2014) ..........................................................3

*In re Checking Acct. Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011) ..................................................................6

*In re Checking Acct. Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................................................7

*In re China Med. Corp. Sec. Litig.*,
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ...........................................6

*In re Health Ins. Innovations Sec. Litig.*,
  2020 WL 10486665 (M.D. Fla. Oct. 21, 2020) ........................................4

*In re Health Ins. Innovations Sec. Litig.*,
  2020 WL 10486666 (M.D. Fla. Nov. 19, 2020) ...................................4, 14

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) .......................5, 7, 11, 12

*In re Healthsouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) .........................................................11

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................15

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................14

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .....................................8, 14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
  2024 WL 1554329 (S.D. Fla. Apr. 10, 2024) ...........................................8

*In re OCA, Inc. Sec. & Deriv. Litig.*,
  2009 WL 512081 (E.D. La. Mar. 2, 2009) ..........................................9, 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................8

*In re Rayonier Inc. Sec. Litig.*,
  2017 WL 4535984 (M.D. Fla. Oct. 5, 2017) ............................................14

*In re S. Co. S'holder Derivative Litig.*,
  2022 WL 4545614 (N.D. Ga. June 9, 2022)............................................12

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ....................................................................3

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................6

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019) ............................................................................5

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...................................................................6

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016),
    *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
    2017 WL 6398014 (6th Cir. Nov. 27, 2017) ........................................................10

*Pritchard v. APYX Med. Corp.*,
    2020 WL 6940765 (M.D. Fla. Nov. 6, 2020) .......................................................12

*Reyes v. AT&T Mobility Servs., LLC*,
    2013 WL 12219252 (S.D. Fla. June 21, 2013) .....................................................10

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..............................................................................9

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) ............................................................................6

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ...........................................................................7

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ..............................................8, 9, 15

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ................................................................................12

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ............................................................................10

## Statutes

15 U.S.C. § 77z-1 ........................................................................................................12

15 U.S.C. § 78u-4 .........................................................................................2, 5, 8, 12

## Rules

Fed. R. Civ. P. 23 ............................................................................................. *passim*

**Other Authorities**

Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting (Jan. 23, 2024), available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf...............................................................................................1-2, 7

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Tianyou Wu, Alexander Yu, and H. Marc Joseph (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this motion for: (1) final approval of the proposed Settlement resolving the Action in exchange for payment of $3.75 million in cash for the benefit of the Settlement Class, and (2) approval of the proposed Plan of Allocation of the proceeds of the Settlement.[1]

## MEMORANDUM OF LAW

### I.    INTRODUCTION

The Parties have reached an agreement to settle this Action in exchange for a non-reversionary $3,750,000 all cash payment (the "Settlement Amount") to be made for the benefit of the Settlement Class. This is a favorable result for the Settlement Class, and it is both substantively and procedurally fair.

Substantively, Plaintiffs' damages expert estimates that if Plaintiffs overcame all the obstacles to establishing liability, and completely prevailed on all of their loss causation and damages theories, the $3.75 million Settlement would equate to approximately 7.1% of the total maximum damages ($52.5 million) potentially available in this Action.[2] However, Defendants[3] raised a number of arguments which could have significantly reduced or eliminated the total amount of potential damages. A recovery of at least 7.1% of maximum damages is an excellent result for the Settlement Class. In fact, it exceeds the average recovery in similar situations. *See* Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023*

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 28, 2024 (the "Stipulation") (ECF No. 94-2), or in the concurrently filed Joint Declaration of Brenda Szydlo and Reed R. Kathrein in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs (the "Joint Declaration"). Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

[2] Plaintiffs' motion for preliminary of approval of the Settlement (ECF No. 94) stated that the Settlement Amount represented approximately 6.6% of the total maximum damages potentially available. However, the Settlement Amount actually represents 7.1% of the total maximum damages—an even more favorable result for the Settlement Class.

[3] The "Individual Defendants" are Michael D. Farkas and Michael P. Rama, and together with Blink, the "Defendants".

*Full-Year Review*, NERA Econ. Consulting, at 25 (Jan. 23, 2024) (finding a median settlement recovery of 3.8% in 2023 securities fraud actions with damages ranging from $50 million to $99 million).[4] For these reasons, and as further discussed herein and in the Joint Declaration, the Settlement is substantively fair.

The Settlement is also procedurally fair. At the time the Settlement was reached, Plaintiffs and Plaintiffs' Counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. For example, Plaintiffs' Counsel, *inter alia*: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) drafted two complaints including the comprehensive and factually detailed operative Complaint; (iii) successfully opposed Defendants' motion to dismiss and overcame the Private Securities Litigation Reform Act of 1995's ("PSLRA") heightened pleading standards; (iv) consulted with a loss causation and damages expert; (v) propounded document requests and received production of documents prior to mediation; (vi) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected mediator, Mr. Jed Melnick, Esq; (vii) prepared the initial draft of the Stipulation and supporting documents; and (viii) worked with Plaintiffs' damages expert to craft the Plan of Allocation. Accordingly, the Settlement is the result of arm's-length negotiations between informed and experienced counsel with the assistance of an experienced, neutral mediator.

As discussed in greater detail below, Plaintiffs and their counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Consequently, Plaintiffs respectfully request that the Court grant final approval. Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed by Plaintiffs' consulting damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. No Settlement Class Member is favored over another under the proposed Plan, as all Settlement Class Members—including Plaintiffs—are treated in the same manner. The Plan of Allocation is fair and reasonable and, as such, it too should be approved.

---

[4] Available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf.

## II.      OVERVIEW OF THE LITIGATION

The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action, and the nature of the claims asserted (¶¶16-28); the negotiations leading to the Settlement (¶¶27-28); the risks and uncertainties of continued litigation (¶¶29-39); and the terms of the Plan of Allocation of the Net Settlement Fund (¶¶52-59).

## III.      STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement for claims brought on a class-wide basis. The standard for determining whether to grant final approval of a class action settlement is whether the settlement is fundamentally "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2). Courts within this Circuit recognize that "public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).[5] "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Checking Acct. Overdraft Litig.*, 2014 WL 11370115, at *7 (S.D. Fla. Jan. 6, 2014).

Rule 23(e)(2)—which governs final approval—requires courts to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)      have the class representatives and class counsel adequately represented the class;

(B)      was the proposal negotiated at arm's-length;

(C)      is the relief provided for the class adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)      the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)      any agreement required to be identified under Rule 23(e)(3); and

(D)      does the proposal treat class members equitably relative to each other.

---

[5] Unless otherwise stated, all emphasis is added, and all internal citations and quotations are omitted.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Fed. R. Civ. P. advisory committee notes to 2018 amendments, 324 F.R.D. 904, 919.

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather [] focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at 918. For this reason, the traditional Eleventh Circuit factors set out in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) for evaluating whether a class action settlement is fair, reasonable, and adequate under Rule 23 are still relevant to the analysis and even overlap with Rule 23(e)(2). *See In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486665, at *3, *11 (M.D. Fla. Oct. 21, 2020) ("In the Eleventh Circuit, the [*Bennett*] factors are also considered in determining whether to approve a settlement . . . ."), *R. & R. adopted*, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020). The *Bennett* factors are:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

As discussed below, application of the factors set forth in Rule 23(e)(2), and the relevant, non-duplicative Eleventh Circuit factors, confirm that the Settlement merits final approval.

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   Plaintiffs and Plaintiffs' Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Here, there can be no dispute that Plaintiffs and Plaintiffs' Counsel adequately represented the Settlement Class.

Plaintiffs' claims are typical of, and coextensive with, the claims of the Settlement Class, and Plaintiffs have no antagonistic interests. Indeed, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *See Monroe*

4

*Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019) (finding adequacy where "[p]laintiffs' interests in establishing Defendants' liability and maximizing the recovery are aligned with the interests of absent Class members"). Plaintiffs have contributed significantly to the Action by overseeing the litigation, communicating with counsel, reviewing pleadings, producing documents to Plaintiffs' Counsel regarding their transactions in Blink Securities, and consulting with Plaintiffs' counsel before and during settlement discussions.

In addition, Plaintiffs retained counsel who are highly experienced in securities litigation (*see* ECF Nos. 22-1, 24-5) (Lead Counsel's Firm Resumes) and who have vigorously prosecuted Plaintiffs' claims. As set forth in the Joint Declaration, Plaintiffs' Counsel, among other things: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) drafted two complaints including the comprehensive and factually detailed operative Complaint; (iii) opposed Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) consulted with a loss causation and damages expert; (v) propounded document requests and received production of documents prior to mediation; (vi) drafted a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected neutral mediator; (vii) engaged in negotiations regarding the terms of the proposed Settlement; (viii) prepared the initial draft of the Stipulation and supporting documents; and (ix) worked with Plaintiffs' consulting damages expert to craft the Plan of Allocation. ¶12. Consequently, this factor supports final approval.

Based on the foregoing, it is clear that Plaintiffs and their counsel adequately represented the Settlement Class. *See In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 (M.D. Fla. Mar. 23, 2021) ("Rule 23(e)(2)(A) [] is satisfied because Lead Plaintiff and Lead Counsel have vigorously represented the Class" by, among other things, conducting "an exhaustive factual investigation . . . prior to filing the Complaint" "opposing Defendants' motion to dismiss" and participating in "intensive [settlement] negotiations"), *R. & R. adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021).

**B.      The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." "The Court must consider whether there is any evidence the settlement was the product of collusion, by examining the negotiating process, to determine whether the compromise was the result of arms-length bargaining between the parties." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001). "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). "Moreover, the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016).

As noted above, the proposed Settlement was achieved only after an all-day mediation session overseen by Mr. Jed Melnick, Esq., and subsequent discussions with Mr. Melnick. As part of those discussions, the Parties prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. The negotiations focused on heavily disputed issues, which were explored in-depth. ¶¶27-28. Thus, "[t]here is no evidence that fraud or collusion affected the settlement in any respect." *Pub. Storage*, 301 F. Supp. 3d at 1248. Accordingly, this factor weighs in favor of final approval. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and was reached with the assistance of a well-qualified and experienced mediator").

**C.      The Settlement Relief is Adequate**

**1.      The Settlement Amount is Within the Range of Reasonableness**

The second and third *Bennett* factors ask courts to consider the range of possible recovery and the point on or below the range of possible recovery at which settlement is fair, reasonable, and adequate. *Bennett*, 737 F.2d at 986. These factors are "easily combined." *Chase Bank*, 297 F.R.D. at 693.

The $3,750,000 non-reversionary Settlement Amount is well within the range of reasonableness to warrant final approval. Here, Plaintiffs' consulting damages expert estimates

that if Plaintiffs had *fully prevailed* at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' *best-case scenario*—the total *maximum* damages would be approximately $52.5 million. Thus, the $3,750,000 Settlement Amount represents approximately 7.1% of the total *maximum* damages *potentially* available. Conversely, if Defendants' arguments in their motion to dismiss were accepted by the trier of fact, the maximum recoverable damages would have been drastically reduced, if not eliminated. A recovery of 7.1% is above the average recovery in similar situations. *See* Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting, at 25 (Jan. 23, 2024) (finding a median settlement recovery of 3.8% in securities fraud actions in 2023 with damages ranging from $50 million to $99 million); *see also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

In light of these risks, among others, there can be no doubt that the Settlement Amount is well within the range of reasonableness, weighing in favor of final approval.

### 2.     The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C)(i), courts also consider "the costs, risks, and delay of trial and appeal." Similarly, the first and fourth *Bennett* factors look at "the likelihood of success at trial," and "the complexity, expense and duration of litigation," respectively. *Bennett*, 737 F.2d at 986.

The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005); *see also In re Checking Acct. Overdraft Litig.*, 2013 WL 11319392, at *8 (S.D. Fla. Aug. 5, 2013) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."). The Court need not determine if the Settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *See In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011).

Here, there is no question that continued litigation would have been costly, risky, and protracted. Courts have repeatedly noted that "stockholder litigation is notably difficult and

notoriously uncertain." *See, e.g.*, *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) ("A securities case, by its very nature, is a complex animal."). Indeed, even after overcoming the stringent PSLRA pleading standards, Plaintiffs would still need to obtain class certification and prove their claims. Overcoming these hurdles would be no small task, and Plaintiffs and Plaintiffs' Counsel recognized the significant risk, time, and expense involved in prosecuting Plaintiffs' claims through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals.

While Plaintiffs and Plaintiffs' Counsel are confident that the Settlement Class meets the requirements for certification (*see* ECF No. 94 (Preliminary Approval Motion) § IV), the class had not been certified at the time of settlement, and Plaintiffs are aware there is a risk that the Court could disagree, or that the Class Period could later be shortened based on a challenge from Defendants regarding price impact. *See*, *e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("[D]efendants must be afforded an opportunity before class certification to defeat the [fraud-on-the-market] presumption [of reliance] through evidence that an alleged misrepresentation did not actually affect the market price of the stock."). Had Plaintiffs failed to obtain class certification, or the proposed Class Period was truncated, the benefit to the Settlement Class would have been substantially reduced or eliminated. Moreover, assuming class certification was achieved, the Court could revisit certification at any time—presenting a continuous risk that this case might not be maintained on a class-wide basis through trial. *See In re Omnivision Techs.*, *Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Thus, the risks of obtaining and maintaining class certification support approval of the Settlement in this case. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1554329, at *7 (S.D. Fla. Apr. 10, 2024) (noting that "maintaining class certification through trial is another over-arching risk" which supported approval of settlement); *see also In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("[T]he uncertainty surrounding class certification supports approval of the Settlement.").

Had the Action continued, Defendants would have no doubt argued at summary judgment and trial that the evidence demonstrated that their public statements did not contain any material misstatements or omissions, that Plaintiffs could not have proven scienter or loss causation, and

that Plaintiffs and the Settlement Class suffered no damages. Plaintiffs would have to prevail on all of these issues at trial, as well as the inevitable appeals that would follow, before they recovered anything. And, of course, the ultimate outcome—many years in the future—would remain uncertain, even if Plaintiffs prevailed at trial. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Finally, given the extensive discovery necessary to prove this Action, and the significant expert testimony that would have been needed to establish liability, loss causation and damages, there is no doubt that continued prosecution of the Action would have been both time intensive and costly. *See In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *11 (E.D. La. Mar. 2, 2009) (noting continued litigation, including through discovery, class certification, trial and appeals, "would consume substantial judicial and attorney time and resources, and avoiding such costs weighs in favor of settlement"); *Thorpe*, 2016 WL 10518902, at *3 (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class," which supported approval).

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $3.75 million Settlement, or, if they did, that they would be able to collect upon it. There was, as in any securities action, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *38. By contrast, the Settlement provides a favorable, immediately realizable recovery and eliminates all the risk, delay, and expense of continued litigation.

### 3.    Other Factors Established by Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for the class is adequate in light of (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (2) "the terms of any proposed award of attorney's fees, including timing of payment," and (3) "any agreement required to be identified under Rule 23(e)(3)." Each of these factors supports the Settlement's final approval

or is neutral.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established procedures for processing claims and efficiently distributing the Net Settlement Fund. Here, Strategic Claims Services ("SCS")—the Court-approved Claims Administrator—will process claims under the guidance of Plaintiffs' Counsel, provide claimants with an opportunity to cure any deficiency in their claim or request review of any denial of their claim, and, ultimately, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan of Allocation. This type of claims processing is standard in securities class action settlements, and is effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6] *See N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 242 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

Second, Plaintiffs' Counsel is applying for a percentage of the common fund fee award in the amount of 33.4% to compensate Plaintiffs' Counsel for their services rendered on behalf of the Settlement Class. As discussed in detail in the accompanying Fee Memorandum,[7] the proposed fee award of 33.4% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the substantial work and efforts of Plaintiffs' Counsel, the risks that they faced in the litigation, the results achieved, and awards in similar complex cases. *See, e.g.*, *Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the [$3,287,500.00] settlement fund is also consistent with the trend in this Circuit."); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6-7 (M.D. Fla. Dec. 29, 2011) (awarding "customary fee" of 33.3% of $2,020,000); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (affirming 33⅓% award of $40

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* ECF No. 94-2 (Stipulation) ¶13.

[7] Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs, and Incorporated Memorandum of Law (the Fee Memorandum").

million).[8]

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of the Company's common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009).

### D.    All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. *See also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 ("Finally, Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation.").

Here, the proposed Plan of Allocation, which was developed by Plaintiffs' damages expert in consultation with Plaintiffs' Counsel, is set forth in the Notice, and provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms. *See* ECF No. 94-4 (Notice) at 11-16. Under the Plan of Allocation, the Claims Administrator will calculate a Recognized Loss Amount for each Settlement Class Member's Settlement Class Period transactions. *Id.*

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation is explained in detail in the Notice and will be based on several factors, including when Blink Securities were purchased and sold, the purchase and sale price of the Blink Securities, and the estimated artificial inflation in the price of the Blink Securities at the time of purchase or sale as determined by Plaintiffs' damages expert. *See* Bravata Decl., Ex. A (Notice) at 7-10. The Net Settlement Fund will be allocated to Authorized Claimants—including Plaintiffs—on a *pro rata* basis based on the relative size of their Recognized Loss. Because the Plan of Allocation does not provide preferential treatment to any Settlement Class Member or to Plaintiffs, this factor supports

---

[8] *See Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35% of $25 million settlement and stating, "[c]ourts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund") (citing cases).

final approval of the proposed Settlement.[9] *See*, *e.g.*, *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *7 (approving plan of allocation and stating that "Rule 23(e)(2)(D) is satisfied because the Settlement treats Settlement Class Members equitably relative to one another via the Plan of Allocation"); *see also Pritchard v. APYX Med. Corp.*, 2020 WL 6940765, at *1-2 (M.D. Fla. Nov. 6, 2020).

> **E.    The Remaining Eleventh Circuit Factors Strongly Support Final Approval**
>
> **1.    The Stage of Proceedings at Which Settlement was Achieved**

Courts also consider "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. In weighing this *Bennett* factor, a Court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted. *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008); *see also Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *5 (S.D. Fla. May 24, 2019) (noting that "early settlements are favored" such that "vast formal discovery need not be taken"). "[F]ormal discovery is not a necessary ticket to the bargaining table" (*In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *7 (N.D. Ga. June 9, 2022)), and courts have rejected the notion that such discovery must take place. *See*, *e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (affirming securities class action settlement where there had been no "formal discovery" but "class counsel had conducted informal discovery by hiring private investigators and experts"); *Hutton ex rel. MasTec, Inc. v. Mas*, 2006 WL 8430549, at *2 (S.D. Fla. Dec. 12, 2006) (approving settlement based on "extensive informal discovery, including consultation with accounting experts; and a review and analysis of MasTec's public disclosures and financial statements").

Here, "[b]ecause the PSLRA prohibits formal discovery during the pendency of any motion to dismiss, the parties were prohibited from engaging in formal discovery until the Court ruled on defendants' motion to dismiss on [November 27, 2023]." *OCA*, 2009 WL 512081, at *12. Nevertheless, as discussed in detail above and in the Joint Declaration, Plaintiffs and their counsel obtained a comprehensive understanding of the strengths and weaknesses of the case and had sufficient information to make an informed decision regarding the fairness of the Settlement.

---

[9] Pursuant to the PSLRA, Plaintiffs also seek reimbursement of costs incurred as a result of their representation of the Settlement Class. *See* 15 U.S.C. §§ 78u- 4(a)(4), 77z-1(a)(4).

Consequently, "[Plaintiffs'] Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation." *Numismatic Guar. Corp.*, 2008 WL 649124, at *11.

### 2. The Substance and Amount of Opposition to the Settlement Favors Final Approval of the Settlement

While the deadline for filing objections is October 2, 2024, to date, no objections to the Settlement or Plan of Allocation have been received. ¶¶51, 59. Such a favorable reaction of the Settlement Class to the Settlement also supports approval. *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement.").[10]

Accordingly, each of these factors favors approval of the Settlement.

## V. THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's July 9, 2024 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 95, ¶¶1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Motion (*see* ECF No. 94 § IV), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VI. THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The Court approved the proposed notice program in the Preliminary Approval Order, and Plaintiffs executed the notice program in accordance with the provisions therein. ¶¶43-51. Notice was given to potential Settlement Class Members via mailing and/or emailing Notice, the Settlement Website (www.strategicclaims.net/Blink/), and publication.[11] As of September 18, 2024, either a copy of the Notice was timely mailed or a link to the Notice and Claim Form was emailed to 193,702 potential Settlement Class Members. *See* Ex. 1 (Bravata Decl.) ¶8.

On August 19, 2024, the Court-approved Summary Notice was published in *Investors' Business Daily* and transmitted once over the *PR Newswire*. Bravata Decl. ¶9. The published

---

[10] Plaintiffs will file reply papers by October 16, 2024 addressing any objections or exclusions that may be received.

[11] The Settlement Website was established on July 19, 2024. Ex. 1 (Bravata Decl.) ¶11. From this website, potential Settlement Class Members can, *inter alia*, download copies of the Notice and Claim Form and submit claims online. *Id.*

Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See* Bravata Decl., Ex. C.

Finally, the Claims Administrator posted the Notice, Claim Form, Stipulation, Complaint and other relevant documents online at the Settlement Website, and provided a toll-free telephone number for Settlement Class Members to call with any questions concerning the Settlement. *Id.* ¶¶10-11. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See, e.g., In re Health Ins. Innovations Sec. Litig.*, 2020 WL 10486666, at *3 (finding notice method adequate where the (i) notice and proof of claim is mailed by first class mail to settlement class members; (ii) summary notice is published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*; and (iii) notice, summary notice, and claim form is posted on claim administrator's website).

## VII.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In the Preliminary Approval Order, the Court approved the Notice, which contains the Plan of Allocation. Plaintiffs now request final approval of the Plan of Allocation. Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standards of review applicable to approval of the settlement as a whole—the plan must be fair, adequate, and reasonable. *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4535984, at *1 (M.D. Fla. Oct. 5, 2017); *see also In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (M.D. Fla. July 9, 2007). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *see also In re Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

Here, the proposed Plan of Allocation is set forth in the Notice posted on the Settlement Website. *See* Bravata Decl. ¶11. Plaintiffs' Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages consultant with the objective of equitably distributing the Net Settlement Fund to Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing. The computations under the Plan of Allocation are a method to weigh the Claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. ¶¶53-58.

14

Under the Plan of Allocation, a Claimant's Recognized Claim is calculated based on the estimated alleged artificial inflation in the price of Blink Securities during the Settlement Class Period, as determined by Plaintiffs' consulting damages expert. The amount of artificial inflation in Blink common stock on each day of the Settlement Class Period is set forth in Table 1 in the Notice. *See* Bravata Decl., Ex. A (Notice) at 8.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or other acquisition of Blink Securities during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided. The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation will be based on several factors, including when the Blink Securities were purchased and sold, the purchase and sale price of the Blink Securities, and the estimated artificial inflation in the price of the Blink Securities at the time of the purchase or sale of the Blink Securities. ¶56.

Plaintiffs' Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Action. *See City of Omaha Police & Fire Ret Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. Mar. 3, 2015) (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses"); *Carpenters Health & Welfare*, 2008 WL 11336122, at *5, *11 (approving substantially similar plan of allocation). Moreover, to date, no Settlement Class Members have objected to the Plan of Allocation. *See In re Catalina Mktg. Corp. Sec. Litig.*, 2007 WL 9723529, at *1 (finding that no objections supports approval of the plan of allocation); *Thorpe*, 2016 WL 10518902, at *4 (same); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate."). The Court should, therefore, approve the Plan of Allocation.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and certify the

Settlement Class for the purposes of settlement.[12]

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Plaintiffs' Counsel has conferred with Defendants' Counsel regarding the requested relief and Defendants do not oppose Plaintiffs' motion.


Dated: September 18, 2024

**BUCKNER + MILES**

By: */s/ David M. Buckner*
David M. Buckner (60550)
2020 Salzedo Street, Suite 302
Coral Gables, FL  33134
Telephone: (305) 964-8003
david@bucknermiles.com

*Liaison Counsel for Lead Plaintiffs and the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Reed R. Kathrein*
Reed R. Kathrein (262161)
Lucas E. Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

Peter A. Shaeffer (*pro hac vice* app. pending)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
petersh@hbsslaw.com

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Brenda Szydlo*
Jeremy A. Lieberman
Brenda Szydlo (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
Dean P. Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY  10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
bszydlo@pomlaw.com
vshteyn@pomlaw.com
dferrogari@pomlaw.com
*Co-Lead Counsel for Plaintiff and the Class*

**LABATON SUCHAROW LLP**

Carol C. Villegas
David J. Schwartz
140 Broadway
New York, NY  10005
Telephone: (212) 907-0870
cvillegas@labaton.com
dschwartz@labaton.com

*Additional Counsel for Lead Plaintiff Tianyou Wu*

---

[12]A [Proposed] Order and Final Judgment was previously submitted. ECF No. 94-7. A proposed Order Approving Plan of Allocation will be submitted with Plaintiffs' reply papers on October 16, 2024, after the deadline for objecting to the motion and requesting exclusion from the Settlement Class has passed.

*Co-Lead Counsel for Plaintiffs and the Class*

**SHEPHERD FINKELMAN MILLER & SHAH LLP**

Jayne A. Goldstein
1625 N. Commerce Parkway, Suite 320
Ft. Lauderdale, FL  33326
Telephone: (954) 515-0123
jgoldstein@sfmlaw.com

*Additional Counsel for Lead Plaintiff Tianyou Wu*

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have caused the foregoing to be filed through the CM/ECF system with the Clerk of the Court on this 18th day of September, 2024, and served thereby on all persons authorized to receive notices via the CM/ECF system.

<u>*/s/David Buckner*</u>
David M. Buckner, Esq.

18