**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

No. 20-23527-civ-WILLIAMS/TORRES

RICHARD M. BUSH, Individually and
On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

BLINK CHARGING COMPANY, MICHAEL
D. FARKAS, and MICHAEL P. RAMA,

      Defendants.

_____/

**PLAINTIFFS' COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,**
**REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARDS**
**TO PLAINTIFFS, AND INCORPORATED MEMORANDUM OF LAW**

<table>
<tr>
<td>

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo (admitted *pro hac vice*)
Villi Shteyn (admitted *pro hac vice*)
Dean Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY  10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
bszydlo@pomlaw.com
vshteyn@pomlaw.com
dferrogari@pomlaw.com

</td>
<td>

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein (262161)
Lucas E. Gilmore (admitted *pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com

Peter A. Shaeffer (*pro hac vice* app. pending)
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
petersh@hbsslaw.com

</td>
</tr>
</table>

*Co-Lead Counsel for Plaintiffs and the Class*
[*Additional counsel on signature page*]

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................... 1

II.    PLAINTIFFS' COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES
       FROM THE SETTLEMENT FUND .................................................................................. 3

III.   A FEE AWARD OF 33.4% OF THE SETTLEMENT FUND IS FAIR AND
       REASONABLE IN THIS ACTION .................................................................................... 4

       A.     The Requested 33.4% Fee is Reasonable Under the *Camden I* Factors ................. 4

              1.     The Time and Labor Expended Supports the Requested Fee .................... 4

              2.     The Novelty and Difficulty of the Issues Involved .................................. 6

              3.     The Skill Required to Perform the Legal Service Adequately and the
                     Experience, Reputation, and Ability of the Attorneys ............................... 9

              4.     The Preclusion of Other Employment ......................................................... 9

              5.     The Requested Fee Is Customary for a Case Such as This One ............... 10

              6.     Plaintiffs' Counsel Assumed Substantial Risk and Pursued This Case
                     on a Pure Contingency Basis ..................................................................... 10

              7.     Time Limitations/Nature and Length of Attorney-Client Relationship.... 11

              8.     The Amount Involved and Results Obtained ............................................ 11

              9.     The Undesirability of the Case ................................................................. 12

              10.    Awards in Similar Cases Support a Fee Award of 33.4% of the
                     Settlement Fund ........................................................................................ 13

              11.    The Plaintiffs Have Approved the Requested Fee ................................... 15

              12.    The Settlement Class's Reaction Also Supports the Requested Fee ........ 15

IV.    THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE
       NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ......................................... 16

V.     THE COURT SHOULD GRANT PLAINTIFFS' PSLRA AWARD REQUESTS ......... 16

VI.    CONCLUSION ............................................................................................................... 18

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................................................1

*Allapattah Servs., Inc. v. Exxon Corp.*,
   454 F. Supp. 2d 1185 (S.D. Fla. 2006) ....................................................................................3

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd sub nom. Behrens v. Wometco Enters.*,
   899 F.2d 21 (11th Cir. 1990) ....................................................................................8, 10, 11, 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................................3

*Cabot E. Broward 2 LLC v. Cabot*,
   2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)........................................................................4, 14

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...................................................................................... f *passim*

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ......................................................................6, 8

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   2008 WL 11234103 (N.D. Ga. Mar. 4, 2008)...........................................................................3

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ......................................................................9, 14

*Cox v. Cmty. Loans of Am., Inc.*,
   2016 WL 9130979 (M.D. Ga. Oct. 6, 2016)..............................................................................2

*David v. Am. Suzuki Motor Corp.*,
   2010 WL 1628362 (S.D. Fla. April 15, 2010)...........................................................................9

*Desue v. 20/20 Eye Care Network, Inc.*,
   2023 WL 4420348 (S.D. Fla. July 8, 2023)...............................................................................6

*Dickenson v. NPAS Sols., LLC*,
   975 F.3d 1244 (11th Cir. 2020),
   *cert. denied sub nom. Johnson v. Dickenson*, 143 S. Ct. 1745 (2023), *and*
   *cert. denied sub nom. Dickenson v. Johnson*, 143 S. Ct. 1746 (2023).....................................17

ii

*Dowdell v. City of Apopka*,
   698 F.2d 1181 (11th Cir. 1983) ........................................................................................16

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................................8

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2017 WL 7798110 (S.D. Fla. Dec. 18, 2017)............................................................10, 14

*Garst v. Franklin Life Ins. Co.*,
   1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999)..................................................4

*Gevaerts v. TD Bank, N.A.*,
   2015 WL 6751061 (S.D. Fla. Nov. 5, 2015).....................................................................16

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
   2019 WL 2249941 (S.D. Fla. May 24, 2019) ...................................................................14

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................................................17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)............................................................................................................7

*Hanley v. Tampa Bay Sports & Ent. LLC*,
   2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)..................................................................14

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) .................................13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..........................................................................................................11

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................................6

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011),
   *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) .........8

*In re Checking Acct. Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..............................................................................4

*In re Dell Inc., Sec. Litig.*,
   2010 WL 2371834 (W.D. Tex. June 11, 2010),
   *aff'd sub nom. Union Asset Mgmt. Holding v. Dell, Inc.*, 669 F.3d 632
   (5th Cir. 2012)............................................................................................................11, 12

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 WL 6771749 (M.D. Ga. Dec. 11, 2019) ...............................................................14, 17

*In re Health Ins. Innovations Sec. Litig.*,
  2021 WL 1341881 (M.D. Fla. March 23, 2021),
  *R. & R. adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021)...............................6, 8, 12, 17

*In re King Res. Co. Sec. Litig.*,
  420 F. Supp. 610 (D. Colo. 1976)......................................................................................7

*In re Korean Ramen Antitrust Litigation*,
  2018 WL 6976912 (N.D. Cal. Dec. 17, 2018) ...........................................................11

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........................................................17

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................8

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13176646 (N.D. Ga. Nov. 9, 2011) ...........................................................13

*In re NetBank, Inc. Sec. Litig.*,
  2011 WL 13353222 (N.D. Ga. Nov. 8, 2011) .............................................................2

*In re Ocean Power Techs., Inc., Sec. Litig.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...............................................................13

*In re Sterling Fin. Corp. Sec. Class Action*,
  2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ............................................................6

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ......................................................................9

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005).........................................................................11

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................................4, 12, 17

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981),
  *overruled on other grounds*, *Int'l Woodworkers of Am, AFL-CIO v. Champion
  Int'l Corp.*, 590 F.2d 1174 (5th Cir. 1986), *superseded by statute*,
  Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071 .............................10

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 679 (M.D. Ala. 1988) ........................................................................5, 6

*Missouri v. Jenkins ex rel. Agyei*,
    491 U.S. 274 (1989)................................................................................................5

*Morgan v. Pub. Storage*,
    301 F. Supp. 3d 1237 (S.D. Fla. 2016) ........................................................10, 14, 16

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative, & "ERISA" Litig.)*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ...............................................................5

*Pinto v. Princess Cruise Lines Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................................................6, 10

*Pritchard v. APYX Med. Corp.*,
    2020 WL 6937821 (M.D. Fla. Nov. 18, 2020) ..................................................17

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)........................................................... *passim*

*Reyes v. AT&T Mobility Servs., LLC*,
    2013 WL 12219252 (S.D. Fla. June 21, 2013) ..................................................14

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .......................................................................8

*Rodriguez v. Alfi, Inc.*,
    2024 WL 1091798 (S.D. Fla. Mar. 11, 2024) (Williams, J.)..............................2, 17

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Jan. 13, 2006) ..................................................9, 13

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000)................................................................14

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) .........................................................................13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)............................................ *passim*

*Varljen v. H.J. Meyers & Co., Inc.*,
    2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)......................................................17

*Waters v. Cook's Pest Control, Inc.*,
    2012 WL 2923542 (N.D. Ala. July 17, 2012) ..................................................10

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ......................................................................5, 14

*Wolff v. Cash 4 Titles*,
    2012 WL 5290155 (S.D. Fla Sept. 26, 2012),
    *R. & R. adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012)........................................10, 14

## Statutes

15 U.S.C. § 77z-1........................................................................................ *passim*

15 U.S.C. § 78u-4 ....................................................................................... *passim*

## Rules

Fed. R. Civ. P. 23...........................................................................................1

## Other Authorities

Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action
    Litigation: 2023 Full-Year Review*, NERA Econ. Consulting (Jan. 23, 2024),
    available at
    https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-
    Year_Sec_Trends_0123.pdf................................................................................12

Plaintiffs' Counsel respectfully moves this Court, pursuant to Fed. R. Civ. P. 23(e), for an order: (1) granting an award of attorneys' fees equaling 33.4% of the $3,750,000 Settlement Fund ($1,252,500) plus any interest earned on this amount at the same rate and for the same period as earned by the Settlement Fund; (2) granting reimbursement of $141,162.89 in reasonable and necessary litigation expenses that were incurred by Plaintiffs' Counsel in prosecuting this Action, plus any interest earned on this amount at the same rate and for the same period as earned by the Settlement Fund; and (3) granting compensatory awards in the amount of $3,000 each (or $9,000 in total) to Plaintiffs as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## MEMORANDUM OF LAW

## I.   INTRODUCTION

The proposed Settlement, which provides for a non-reversionary cash payment of $3,750,000 in exchange for the resolution of this Action, represents an extremely favorable result for the Settlement Class, particularly when juxtaposed against the significant obstacles that Court-appointed Lead Plaintiffs Tianyou Wu, Alexander Yu, and H. Marc Joseph (collectively, "Plaintiffs") would have to overcome in order to prevail in this complex securities litigation. In undertaking this case, Plaintiffs' Counsel faced numerous challenges to establishing liability, loss causation, and damages. The risk of losing was very real from the start, enhanced by the fact that Plaintiffs' Counsel would be litigating against a corporate defendant represented by highly skilled defense counsel under the PSLRA's heightened pleading standard and automatic stay of discovery. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[2] Despite these risks,

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Stipulation and Agreement of Settlement dated July 2, 2024 (the "Stipulation") (ECF No. 94-2), or in the concurrently filed Joint Declaration of Brenda Szydlo and Reed R. Kathrein in Support of (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Plaintiffs' Counsel's Motion for an Award of Attorneys', Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs (the "Joint Declaration"). Unless otherwise noted, all citations to "¶ " and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

[2] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

Plaintiffs' Counsel collectively worked 1,937.82 hours over the course of approximately four years, and advanced $141,162.89 in costs, all on a fully contingent basis, with no guarantee of ever being compensated. The work performed by Plaintiffs' Counsel is summarized below (*see* § III.A.1, *infra*) and set forth in detail in the Joint Declaration.[3]

Plaintiffs' Counsel respectfully requests a fee award in the amount of 33.4% of the Settlement Fund as compensation for their significant efforts and achievements on behalf of the Settlement Class. The requested fee is consistent with attorney-fee awards in comparable class action settlements, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar. Indeed, the requested fee represents a fractional (or negative) multiplier of 0.91 on Plaintiffs' Counsel's lodestar, which itself strongly indicates the reasonableness of the requested fee. *See In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 8, 2011) (lodestar-multiplier "cross-check [that] yields a negative multiplier … further confirms that the awarded [percentage] fee is wholly proper").

Plaintiffs' Counsel also seek reimbursement of $141,162.89 in out-of-pocket litigation expenses incurred in prosecuting this Action. *See* ¶78. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, each Plaintiff respectfully requests a PSLRA award in the amount of $3,000 to compensate each Plaintiff for his time and effort expended on behalf of the Settlement Class. Each Plaintiff familiarized himself with the facts of the case, reviewed relevant pleadings, conferred with Plaintiffs' Counsel about the litigation, collected and produced relevant trading documents to Plaintiffs' Counsel, and authorized Plaintiffs' Counsel to settle the case. *See* Ex. 2 ("Wu Decl.") ¶¶3-5; Ex. 3 ("Yu Decl.") ¶¶3-5; Ex. 4 ("Joseph Decl.") ¶¶3-5; *Rodriguez v. Alfi, Inc.*, 2024 WL 1091798, at *2  (S.D. Fla. Mar. 11, 2024) (Williams, J.) (awarding plaintiffs $4,500 ($1,500 each) in PSLRA awards). But for their efforts, the Settlement Class would have recovered nothing. *See, e.g.*, *Cox v. Cmty. Loans of Am., Inc.*, 2016 WL 9130979, at *1 (M.D. Ga. Oct. 6, 2016) (approving service award to named plaintiff because their "commitment and participation allowed this matter

---

[3] The Joint Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to the declaration for the procedural history of the Action (¶¶16-28); summary of the work performed by Plaintiffs' Counsel (¶¶12-28); and additional information on the factors that support this fee request (¶¶60-82), including the lodestar cross-check (¶¶62-68).

to be fully litigated on a class-wide basis on behalf of all others similarly situated").

For the reasons set forth herein, and in the Joint Declaration, Plaintiffs' Counsel respectfully request that the Court award Plaintiffs' Counsel 33.4% of the Settlement Fund (plus interest), approve reimbursement of $141,162.89 in litigation-related expenses (plus interest), and grant PSLRA awards to Plaintiffs in the aggregate amount of $9,000.

## II. PLAINTIFFS' COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE SETTLEMENT FUND

The Supreme Court and the Eleventh Circuit have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). The purpose of the common fund doctrine is to compensate class counsel fairly and adequately for services rendered and prevent unjust enrichment of persons who benefit from a lawsuit without bearing its cost. *See Boeing*, 444 U.S. at 478. Courts have also recognized that, in addition to providing just compensation, fee awards are "vital to the enforcement of the securities laws" by "reward[ing] counsel for bringing these actions and [] encourag[ing] them to bring additional such actions." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 WL 11234103, at *5 (N.D. Ga. Mar. 4, 2008) (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992)).[4]

In *Camden I*, the Eleventh Circuit provided that "attorneys' fees awarded from a common fund *shall* be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. This approach is consistent with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.").

A percentage-based fee award accomplishes several objectives:

First, it is consistent with the private [marketplace] where contingent fee attorneys are regularly compensated on a percentage of recovery method. Second, it provides

---

[4] *Accord Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006) ("Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.' … Unless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct.").

a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances. Finally, the percentage approach reduces the burden [on] the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members.

*Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *83-84 (N.D. Ala. June 25, 1999). These rationales support the percentage-based award requested by Plaintiffs' Counsel.

### III.   A FEE AWARD OF 33.4% OF THE SETTLEMENT FUND IS FAIR AND REASONABLE IN THIS ACTION

#### A.      The Requested 33.4% Fee is Reasonable Under the *Camden I* Factors

In the Eleventh Circuit, "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774; *see also In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011) (similar). In application, this means that "the amount of any fee 'must be determined upon the facts of each case' after evaluating certain criteria." *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *1 (S.D. Fla. Nov. 9, 2018) (quoting *Camden I*, 946 F.2d at 774-75). Such criterion includes the twelve *Johnson* factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). *Camden I* also recognized that in awarding a percentage fee award, a court may properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel … and the economics involved in prosecuting a class action." *Id.* at 775.

#### 1.      The Time and Labor Expended Supports the Requested Fee

Here, the "time and labor" required to successfully obtain the Settlement confirms the reasonableness of the requested fee. *Camden I*, 946 F.2d at 772 n.3. As detailed herein, and in the Joint Declaration, Plaintiffs' Counsel have litigated the Action for approximately four years. ¶62.

4

During the course of the litigation, Plaintiffs' Counsel, *inter alia*,: (i) conducted an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) drafted two complaints including the comprehensive and factually detailed operative Complaint; (iii) successfully, in part, opposed Defendants' motion to dismiss despite the PSLRA's heightened pleading standard; (iv) consulted with loss causation and damages experts; (v) propounded document requests and received production of documents prior to mediation; (vi) drafted a mediation statement containing detailed analyses of the strengths, risks, and potential issues in the litigation and participated in a full-day mediation session overseen by a well-respected mediator; (vii) worked with a market efficiency expert to prepare a supporting declaration for class certification as well as substantially draft a class certification motion for filing just prior to the parties reaching the Settlement; (viii) prepared the initial draft of the Stipulation and supporting documents; (ix) worked with Plaintiffs' damages experts to craft the Plan of Allocation; (x) oversaw the implementation of the notice process; and (xi) drafted the final approval motion and supporting papers. ¶12.

The efforts that were required to complete these tasks, as well as others, were extensive and represented a considerable risk, given the contingency-based nature of Plaintiffs' Counsel's representation. ¶62. To date, Plaintiffs' Counsel have spent over 1,937.82 hours litigating this Action (¶64) and incurred $141,162.89 in unreimbursed litigation expenses (¶78). These numbers reflect Plaintiffs' Counsel's commitment to vigorously pursuing this Action for the benefit of Plaintiffs and the Settlement Class.

Additionally, while not required by the Eleventh Circuit, an analysis of the requested fee utilizing the "lodestar/multiplier" approach as a cross-check, further supports the reasonableness of the requested fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."). Here, the cumulative time expended by Plaintiffs' Counsel, multiplied by current hourly rates,[5] results in a lodestar of $1,364,065.00. The

---

[5] Plaintiffs' Counsel's rates range from $800-$1,200 per hour for partners, to $500-$650 per hour for all other attorneys. ¶65. Courts use current rather than historic rates to "compensate for delay in receiving fees." *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative, & "ERISA" Litig.)*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) (citing *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989)); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 700 (M.D. Ala. 1988) (court "should take into account the time value of money and the effects of inflation and generally

requested fee thus equates to a negative (or fractional) multiplier of 0.91 (*i.e.*, the requested fee is *less than* Plaintiffs' Counsel's lodestar).[6] Courts have routinely recognized that a fractional multiplier strongly supports a finding that the fee award is reasonable. *See Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *10 (S.D. Fla. July 8, 2023) ("This negative multiplier supports the reasonableness of the fee request."); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *12 (M.D. Fla. March 23, 2021) ( "Typically, courts award a [positive] multiplier range of 2.5 to 4 in class actions."), *R. & R. adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021); *see also Mashburn*, 684 F. Supp. at 702 ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable."); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "in large and complicated class actions range from 2.26 to 4.5" and that "three appears to be the average").

Accordingly, this factor supports the fee request. *See Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *8 (S.D. Fla. Oct. 17, 2016) (finding the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported counsel's fee request).

### 2. The Novelty and Difficulty of the Issues Involved

Courts have repeatedly recognized that securities litigation is "notably difficult and notoriously uncertain" (*Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008)) and that "a securities case, by its very nature, is a complex animal." *Thorpe*, 2016 WL 10518902, at *3. Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes to the law. *Id.* at *9 (quoting *In re Sterling Fin. Corp. Sec. Class Action*, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009)); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated … where a number of

---

award compensation at current rates rather than historic rates"). Additionally, Plaintiffs' Counsel's rates are comparable to firms engaged in similar complex litigation (*see* Ex. 8 (Table of Peer Law Firm Billing Rates)), and Courts within this Circuit have consistently approved rates similar to Plaintiffs' Counsel's rates.

[6] The multiplier is calculated by dividing the $1,252,500 fee request by the $1,364,065 lodestar that Plaintiffs' Counsel incurred.

controlling decisions have recently shed new light on the standard for loss causation."). This case was no exception. "The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 637 (D. Colo. 1976).

Throughout this litigation, Plaintiffs' Counsel assumed the significant risk that Defendants would aggressively defend this case at every stage of litigation. While Plaintiffs' Counsel survived the pleading stage, risk remained. Immediately prior to settling, Plaintiffs were preparing a motion for class certification with an accompanying expert declaration addressing market efficiency. ¶26. The class certification opposition would have afforded Defendants an opportunity to severely weaken Plaintiffs' case prior to any decision on the merits. *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 284 (2014) ("[D]efendants must be afforded an opportunity before class certification to defeat the [fraud-on-the-market] presumption [of reliance] through evidence that an alleged misrepresentation did not actually affect the market price of the stock.").

Even if Plaintiffs had achieved class certification, they also understood that Defendants raised credible arguments challenging the sufficiency of the allegations of falsity, materiality, scienter, loss causation and damages, and ultimate success was not a foregone conclusion. *See* ¶¶29-39; *see also Ressler*, 149 F.R.D. at 654 (noting "all the multi-faceted and complex legal questions endemic to § 10(b) litigation, including proving scienter, materiality, causation, and damages").

For instance, Defendants argued that Plaintiffs would be unable to prove that any of the challenged statements were materially false or misleading. While the Court agreed with Defendants that "not every 'slip up and misstep . . . within a touted sales program' must be disclosed to investors," the Court found that a "natural implication" of Defendants promoting "the number of chargers Blink had deployed and stating that consumers can 'easily' charge at 'any' of the charging stations is that those charging stations will, by and large, work." ECF No. 63 (Omnibus Order) at 18-19 (omission in original). Consequently, Defendants would have argued that it would not be enough for Plaintiffs to show that some charging units were not functioning during the Class Period. Rather, Plaintiffs would need to demonstrate that there was an exceptionally high rate of non-functioning charging units throughout the Class Period and the country, and for which Blink had maintenance responsibility.

In addition, Defendants would also have continued to vigorously dispute that they had

7

acted with scienter, an element commonly regarded as the most difficult to prove in a securities fraud action. *See Thorpe*, 2016 WL 10518902, at *3 ("Proving scienter at trial would have required showing not just negligence but severe recklessness, posing additional substantial risk and uncertainty."); *In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 (same).

Even assuming Plaintiffs were able to establish liability, there still existed major obstacles to proving loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (noting plaintiffs' burden to prove "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Proving loss causation and damages adds significant risk given that a jury would decide the issues based on expert testimony. *See Coca-Cola Co.*, 2008 WL 11336122, at *8 ("The determination of loss causation and damages is a complicated and uncertain process involving conflicting expert testimony. Expert testimony could rest on many assumptions, any of which could be rejected by a jury as speculative or unreliable."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("In the battle of experts, it is virtually impossible to predict with certainty which testimony will be credited."), *aff'd sub nom*. *Behrens v. Wometco Enters.*, 899 F.2d 21 (11th Cir. 1990). Had any of Defendants' arguments concerning loss causation or damages been accepted in whole or in part, it could have eliminated or greatly reduced any potential recovery. A victory—much less one that exceeded $3,750,000—was far from assured. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based on plaintiffs' expert's failure to disaggregate certain negative information), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012). Even if Plaintiffs prevailed in full at trial, the ultimate outcome – many years in the future – would remain uncertain. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).

Despite the substantial risks inherent in this complex litigation, Plaintiffs' Counsel achieved a $3,750,000 settlement. This is an extremely favorable result for the Settlement Class considering the aforementioned risks. As such, this factor weighs heavily in favor of the requested fee. *See Thrope*, 2016 WL 10518902, at *9 (the fact case involved "multi-faceted and complex legal questions endemic to cases based on alleged violations of federal securities law" supported fee application); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having

8

borne and successfully overcome that risk.").

### 3. The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The Court should also consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," (*David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at \*8 n.15 (S.D. Fla. April 15, 2010)), as well as "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3.

As demonstrated by their respective firm resumes, Lead Counsel have many years of experience litigating securities class actions. *See* ECF Nos. 22-1, 24-5. Plaintiffs' Counsel's experience allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, and formulate strategies to effectively prosecute the Action. Without question, Plaintiffs' Counsel's skill and experience were a major factor in obtaining the excellent result achieved by this Settlement. *See Am. Suzuki Motor Corp.*, 2010 WL 1628362, at \*8 n.15 (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one"); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at \*4 (N.D. Ga. Oct. 26, 2012) ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.").

In evaluating the quality of Plaintiffs' Counsel's work, it is also important to consider the "quality of the opposition the plaintiffs' attorneys faced." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001). Here, Defendants were vigorously represented by experienced and highly skilled counsel from Holland & Knight LLP. Notwithstanding this formidable opposition, Plaintiffs' Counsel's thorough investigation, vigorous opposition, and mediation efforts positioned Plaintiffs to achieve a favorable recovery for the Settlement Class. Thus, this factor militates in favor of the requested fee. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*30 (N.D. Tex. Jan. 13, 2006) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."); *see also Thorpe*, 2016 WL 10518902, at \*9 (noting Holland & Knight LLP has a "reputation[] for vigorous advocacy in the defense of complex civil cases").

### 4. The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case—1,937.82 hours (¶64)—was

9

time Plaintiffs' Counsel could have devoted to other matters. Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work. Consequently, this factor further supports the requested fee.

### 5. The Requested Fee Is Customary for a Case Such as This One

"The court [also] considers the market rate when determining fee awards to class counsel." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1255 (S.D. Fla. 2016). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Princess Cruise Lines*, 513 F. Supp. 2d at 1340. "In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients." *Id.* at 1341.[7] Thus, Plaintiffs' Counsel's request for 33.4% of the Settlement Fund is well within the private marketplace range and is consistent with what courts routinely award in class actions, as discussed below. *See infra* at § III.A.10. Accordingly, this factor weighs in favor of the requested fee.

### 6. Plaintiffs' Counsel Assumed Substantial Risk and Pursued This Case on a Pure Contingency Basis

Courts have consistently recognized that "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, *Int'l Woodworkers of Am, AFL-CIO v. Champion Int'l Corp.*, 590 F.2d 1174 (5th Cir. 1986), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071.[8] Moreover,

---

[7] *See also Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) ("The requested fee also falls within the range of the customary fee in the private [marketplace], where 40 percent fee contracts are common for complex cases such as this."); *Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542, at *17 (N.D. Ala. July 17, 2012) (finding customary fee factor weighed in favor of a 35% fee award because class counsel "customarily enters into contingent fee agreements allowing for recovery of 33% in low risk cases with uncontested or moderately contested liability, and up to 49% in higher risk cases with difficult liability issues").

[8] *See also Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *1 (S.D. Fla Sept. 26, 2012) ("It was Class Counsel alone that bore the entire risk of this representation – a significant finding in support of the requested fee."), *R. & R. adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012); *Princess Cruise Lines*, 513 F. Supp. 2d at 1339 ("A determination of a fair fee for Class

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged. If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements — often the only means of legal representation available given the incredible expense associated with these actions — must be promoted.

*Behrens*, 118 F.R.D at 548.

The risk of no recovery in complex cases like this one is not illusory. Plaintiffs' Counsel understands that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See*, *e.g.*, *In re Korean Ramen Antitrust Litigation*, 2018 WL 6976912 (N.D. Cal. Dec. 17, 2018) (where after more than five years of litigation, the expenditure of millions of dollars in attorney time and hard costs, the jury returned a verdict in favor of defendants). The significant risks inherent in this case justify the requested fee. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

### 7.    Time Limitations/Nature and Length of Attorney-Client Relationship

Aside from normal court scheduling, no particular time limits existed in this case. Therefore, this factor is neutral. *See Thorpe*, 2016 WL 10518902, at \*11; *see also In re Dell Inc., Sec. Litig.*, 2010 WL 2371834, at \*18 (W.D. Tex. June 11, 2010) ("[T]hese factors are inapplicable to this case, and are therefore neutral."), *aff'd sub nom. Union Asset Mgmt. Holding v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012).

### 8.    The Amount Involved and Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical [fee award] factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

---

Counsel must include consideration of the contingent nature of the fee ... and the fact that the risks of failure and nonpayment in a class action are extremely high.").

11

The proposed $3.75 million all cash, non-reversionary Settlement is an excellent result for the Settlement Class, both quantitatively and when weighed against the risk of a lesser (or no) recovery if the case proceeded through class certification, summary judgment, and trial. Plaintiffs' damages expert estimates that if Plaintiffs had *fully prevailed* at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' *best-case scenario*—the total *maximum* damages would be approximately $52.5 million. Thus, the $3,750,000 Settlement Amount represents approximately 7.1% of the total *maximum* damages *potentially* available. [9] A recovery of 7.1% is well above the median recovery in securities class actions, and is an excellent result when compared to the risks of continued litigation. *See* Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting, at 25 (Jan. 23, 2024), available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf (In 2023, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $50 million to $99 million was 3.8%, according to NERA Economic Consulting.); *see also In re Health Ins. Innovations Sec. Litig.*, 2021 WL 1341881, at *8 ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

### 9. The Undesirability of the Case

The tenth *Johnson* factor, undesirability of the case, also supports the requested fee. Securities class actions have been recognized as "undesirable" due to the elevated risk of litigating under the PSLRA, formidable opposition, high out-of-pocket costs, and the distinct possibility of no recovery. *See Health Ins. Innovations*, 2021 WL 1341881, at *12 ("The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable."); *see also Dell*, 2010 WL 2371834, at *19 ("Class action cases often carry with them elevated risks, a requirement of lengthy investigation through informal discovery, and a

---

[9] Plaintiffs' motion for preliminary of approval of the Settlement (ECF No. 94) stated that the Settlement Amount represented approximately 6.6% of the total maximum damages potentially available. However, the Settlement Amount actually represents 7.1% of the total maximum damages—an even more favorable result for the Settlement Class.

possibility of no recovery, all of which speak to the undesirability of such a case.").

This case was no exception. Plaintiffs' Counsel undertook the Action on a fully contingent basis, assuming the significant risk that the litigation would yield no recovery and leave counsel uncompensated. Unlike counsel for Defendants, who are typically paid an hourly rate and regularly reimbursed for their expenses, Plaintiffs' Counsel have not been compensated for any time or reimbursed for any of out-of-pocket expenses since this case began over four years ago. ¶76. The only certainty was the absence of a guaranteed fee, or reimbursement of out-of-pocket expenses, without a successful result.

Furthermore, the risks in this case were manifold. As discussed in greater detail above and in the Joint Declaration, Defendants were represented by highly skilled litigators, and Plaintiffs' Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards, the complex nature of the claims at issue, the high cost of experts and investigators needed to litigate this Action, and the risk of non-payment. *See In re NetBank, Inc. Sec. Litig.*, 2011 WL 13176646, at \*3 (N.D. Ga. Nov. 9, 2011) (noting the "serious risks and uncertainties in continuing [securities] litigation, even of obtaining no recovery at all"); *Schwartz*, 2005 WL 3148350, at \*32 ("[T]he risk of no recovery in complex [securities] cases of this type is very real."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

All these facts and obstacles further underscore the undesirability of this Action from a risk perspective, and the strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits"); *In re Ocean Power Techs., Inc., Sec. Litig.*, 2016 WL 6778218, at \*28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain."). Consequently, this factor weighs in favor of the requested fee.

### 10. Awards in Similar Cases Support a Fee Award of 33.4% of the Settlement Fund

When *Camden I* was decided over 30 years ago, the "'benchmark' percentage fee award" was considered to be 25%. 946 F.2d at 774-75. However, the Court made clear that there "is no

hard and fast rule mandating a certain percentage of a common fund … because the amount of any fee must be determined upon the facts of each case." *Id.* Today's "benchmark" is much higher, particularly in complex cases such as this. *See Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases and stating, "Class Counsel's request for one-third of the settlement fund is … consistent with the trend in this Circuit"); *Morgan*, 301 F. Supp. 3d at 1257-58 (collecting cases and stating, "a fee award of 33% … is consistent with attorneys' fees awards in federal class actions in this Circuit").

Recent empirical studies have shown that in this Circuit the median percentage fee award is 33%, which is not surprising as "courts within this Circuit have routinely awarded attorneys' fees of *33 percent or more* of the gross settlement fund." *Fernandez*, 2017 WL 7798110, at *4 (collecting cases); *see Hanley v. Tampa Bay Sports & Ent. LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding a "slight increase from the one-third benchmark"); *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund.").[10]

Moreover, a review of attorneys' fees awarded in comparable complex litigation settlements in the Eleventh Circuit, as well as nationwide, strongly supports the reasonableness of the 33.4% fee request here. *See Waters*, 190 F.3d at 1294-95 (affirming 33⅓% award of $40 million common fund); *Fernandez*, 2017 WL 7798110, at *4 (awarding 35% of $25 million common fund); *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (awarding 33⅓% of $21 million common fund); *Cabot*, 2018 WL 5905415, at *1-2 (awarding 33⅓% of $100 million common fund); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *1 (N.D. Ga. Oct. 26, 2012) (awarding one-third of the $75 million settlement fund).[11]

In sum, the fees commonly awarded in comparable complex litigation settlements strongly

---

[10] *See also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that … fee awards in class actions average around one-third of the recovery."); *Cash 4 Titles*, 2012 WL 5290155, at *6 (collecting cases and stating that "the [33%] requested fee is entirely consistent with the percentage awarded in class actions in the Southern and Middle Districts of Florida since the percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden I*.").

[11] *See also* Ex. 9 (collecting Eleventh Circuit cases where 33.3% or higher attorneys' fees were awarded); *Cash 4 Titles*, 2012 WL 5290155, at *5 ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide— roughly one-third.").

demonstrate the reasonableness of the requested fee.

### 11.  The Plaintiffs Have Approved the Requested Fee

As set forth in each of the Plaintiffs' declarations, Plaintiffs played an active role in the prosecution and resolution of this Action, and thus have a sound basis for assessing the reasonableness of the fee request. *See* Ex. 2 (Wu Decl.) ¶¶3-5; Ex. 3 (Yu Decl.) ¶¶3-5; Ex. 4 (Joseph Decl.) ¶¶3-5. Each Plaintiff has carefully evaluated the fee request and fully supports and approves the fee request as fair and reasonable in light of the result obtained, the work performed by Plaintiffs' Counsel, and the risks of the litigation. *See* Ex. 2 (Wu Decl.) ¶¶9-11; Ex. 3 (Yu Decl.) ¶¶9-11; Ex. 4 (Joseph Decl.) ¶¶9-11.

### 12.  The Settlement Class's Reaction Also Supports the Requested Fee

The reaction of the Settlement Class to date further confirms the reasonableness of the requested fee. Here, the Settlement Class was notified of the Settlement and the request for attorney's fees, reimbursement of litigation expenses, and awards to Plaintiffs by a combination of first-class mail, publication, email, and the settlement website. As of September 18, 2024, the Claims Administrator, Strategic Claims Services ("SCS"), has disseminated the Notice to approximately 193,702 potential Settlement Class Members and their nominees informing them of Plaintiffs' Counsel's intention to apply to the Court for an award of attorneys' fees of 33.4% of the Settlement Fund (plus interest), reimbursement of litigation expenses up to $185,000 (plus interest), and awards to Plaintiffs in an aggregate amount not to exceed $9,000. *See* Ex. 1 (Bravata Decl.) ¶8, Ex. A (Notice) ¶5. Settlement Class Members were also informed of their right to object to such requests. *See* Bravata Decl., Ex. A (Notice) at 11. In addition, SCS caused the Notice and other case-related documents to be posted on the Settlement website, and the Summary Notice to be published in *Investor's Business Daily* and transmitted over the *PR Newswire*. *See* Ex. 1 (Bravata Decl.) ¶¶9, 11. While the time to object does not expire until October 2, 2024, to date, no objections to the request for attorneys' fees and expenses, or compensatory awards to Plaintiffs, have been received.[12] *Id.* ¶13. The lack of objections is "strong evidence of the propriety and acceptability" of the fee request. *Ressler*, 149 F.R.D. at 656.

---

[12] Plaintiffs' Counsel will address any objections that may be received in the reply papers to be filed with the Court on October 16, 2024.

**IV.   THE LITIGATION EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

Plaintiffs' Counsel's fee application includes a request for reimbursement of expenses that were "reasonable and necessary to obtain the [S]ettlement reached." *Ressler*, 149 F.R.D. at 657; *see also* ¶¶78-82. These expenses are properly recoverable. *Dowdell v. City of Apopka*, 698 F.2d 1181 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("[P]laintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action."). As set forth in detail in the Joint Declaration, Plaintiffs' Counsel incurred $141,162.89 in litigation-related expenses. ¶¶78-80.

The types of expenses for which Plaintiffs' Counsel seek reimbursement were necessarily incurred in litigation and are routinely charged to classes in contingent litigation and clients billed by the hour. These expenses include, among others: expert fees; investigator fees; online factual and legal research fees; mediation fees; travel and lodging; photocopy charges, court filing fees; and press releases and newswire costs. *Id.* Reimbursement of similar expenses is routinely permitted. *See Morgan*, 301 F. Supp. 3d at 1258; *see also Gevaerts v. TD Bank, N.A.*, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (approving reimbursement of expenses related to, among other things, "fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses"). Moreover, from the outset, Plaintiffs' Counsel were aware that they may not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Plaintiffs' Counsel were motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. ¶79.

Moreover, the Notice informed potential Settlement Class Members that Plaintiffs' Counsel would apply for reimbursement of litigation expenses in an amount not to exceed $185,000. *See* Bravata Decl., Ex. A (Notice) ¶5. Here, the total litigation expenses in the amount of $141,162.89 is below the amount listed in the Notice and, to date, there has been no objection to the request for expenses. ¶51.

**V.   THE COURT SHOULD GRANT PLAINTIFFS' PSLRA AWARD REQUESTS**

Plaintiffs respectfully request a total of $9,000 (or $3,000 for each Plaintiff) in PSLRA awards to reimburse Plaintiffs for time spent prosecuting the Action. 15 U.S.C. §§ 77z-1(a)(4);

78u-4(a)(4).[13] "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019); *see Health Ins. Innovations*, 2021 WL 1341881, at *13 (granting PSLRA award to lead plaintiff in the amount of $3,125 "for his time"). Reimbursement of such costs are permitted as they "encourage[] participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

As set forth in their respective declarations, Plaintiffs have actively and effectively fulfilled their obligations as representatives of the Settlement Class. Plaintiffs, among other things: (i) participated in discussions with Plaintiffs' Counsel concerning the prosecution of the Action and strengths and weaknesses of the claims; (ii) reviewed significant pleadings; (iii) collected and produced documents to counsel; and (iv) were involved in mediation efforts and settlement negotiations. *See* Ex. 2 (Wu Decl.) ¶¶3-5; Ex. 3 (Yu Decl.) ¶¶3-5; Ex. 4 (Joseph Decl.) ¶¶3-5. The foregoing efforts are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009); *see, e.g.*, *Alfi*, 2024 WL 1091798, at *2 (awarding plaintiffs $$4,500 ($1,500 each) in PSLRA awards); *Thorpe*, 2016 WL 10518902, at *12 (awarding $15,000 to each class representative as "fair and reasonable"); *Flowers Foods*, 2019 WL 6771749, at *2 (awarding plaintiffs $10,000 each "as reimbursement for [their] reasonable costs and expenses directly related to [their] representation of the Settlement Class"). Moreover, to date, there have been no objections to the request for awards to Plaintiffs as reimbursement for their reasonable costs incurred in representing the Settlement Class. ¶51.

Accordingly, Plaintiffs' Counsel request that the Court award $3,000 to each Plaintiff (or

---

[13] The fact that the Plaintiff awards requested here are specifically allowed by federal statute differentiates them from the "incentive payments" that the Eleventh Circuit recently held were forbidden in certain class actions. *Compare Dickenson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) ("If either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute."), *cert. denied sub nom. Johnson v. Dickenson*, 143 S. Ct. 1745 (2023), *and cert. denied sub nom. Dickenson v. Johnson*, 143 S. Ct. 1746 (2023); *with Pritchard v. APYX Med. Corp.*, 2020 WL 6937821, at *2 (M.D. Fla. Nov. 18, 2020) (granting PSLRA award following *Johnson* decision), *and Health Ins. Innovations*, 2021 WL 1341881, at *13 (same).

$9,000 in total).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel respectfully request the Court grant the motion.[14]

## <u>LOCAL RULE 7.1(a)(3) CERTIFICATION</u>

Plaintiffs' Counsel has conferred with Defendants' Counsel regarding the requested relief, and Defendants do not take a position on Plaintiffs' Counsel's motion.

Dated: September 18, 2024                    Respectfully submitted,

**BUCKNER + MILES**                          **POMERANTZ LLP**

By: */s/ David M. Buckner*                   By: */s/ Brenda Szydlo*
David M. Buckner (60550)                     Jeremy A. Lieberman
2020 Salzedo Street, Suite 302               Brenda Szydlo (admitted *pro hac vice*)
Coral Gables, FL  33134                      Villi Shteyn (admitted *pro hac vice*)
Telephone: (305) 964-8003                    Dean P. Ferrogari (admitted *pro hac vice*)
david@bucknermiles.com                       600 Third Avenue, 20th Floor
                                             New York, NY  10016
*Liaison Counsel for Lead Plaintiffs and the*   Telephone: (212) 661-1100
*Class*                                      jalieberman@pomlaw.com
                                             bszydlo@pomlaw.com
**HAGENS BERMAN SOBOL SHAPIRO**              vshteyn@pomlaw.com
**LLP**                                      dferrogari@pomlaw.com

By: */s/ Reed R. Kathrein*                   *Co-Lead Counsel for Plaintiff and the Class*
Reed R. Kathrein (262161)
Lucas E. Gilmore (admitted *pro hac vice*)   **LABATON SUCHAROW LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA  94710                          Carol C. Villegas
Telephone: (510) 725-3000                    David J. Schwartz
reed@hbsslaw.com                             140 Broadway
lucasg@hbsslaw.com                           New York, NY  10005
                                             Telephone: (212) 907-0870
                                             cvillegas@labaton.com
Peter A. Shaeffer (*pro hac vice* app. pending)   dschwartz@labaton.com
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611                            *Additional Counsel for Lead Plaintiff*
Telephone: (708) 628-4949                    *Tianyou Wu*
petersh@hbsslaw.com

---

[14] A proposed Order granting the requested relief will be submitted with Plaintiffs' Counsel's reply papers on October 16, 2024, after the deadline for objecting to this motion has passed.

*Co-Lead Counsel for Plaintiffs and the Class*            **SHEPHERD FINKELMAN MILLER & SHAH LLP**

Jayne A. Goldstein
1625 N. Commerce Parkway, Suite 320
Ft. Lauderdale, FL  33326
Telephone: (954) 515-0123
jgoldstein@sfmlaw.com

*Additional Counsel for Lead Plaintiff Tianyou Wu*

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing to be filed through the CM/ECF system with the Clerk of the Court on this 18th day of September, 2024, and served thereby on all persons authorized to receive notices via the CM/ECF system.

*/s/David Buckner*
David M. Buckner, Esq.

20