**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

No. 20-23527-civ-WILLIAMS/TORRES

RICHARD M. BUSH, Individually and
On Behalf of All Others Similarly Situated,

      Plaintiff,

v.

BLINK CHARGING COMPANY, MICHAEL
D. FARKAS, and MICHAEL P. RAMA,

      Defendants.

                                          /

**JOINT DECLARATION OF BRENDA SZYDLO AND REED R. KATHREIN IN
SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) PLAINTIFFS'
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARDS
TO PLAINTIFFS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 3

II.     PROSECUTION OF THE ACTION ................................................................... 5

        A.      Background ............................................................................................. 5

        B.      Commencement of the Instant Action and Appointment of Lead Plaintiff and
                Lead Counsel ......................................................................................... 6

        C.      The Comprehensive Pre-Filing Investigation and Preparation of the Complaint... 7

        D.      Blink's Motion to Dismiss the Complaint ............................................. 7

        E.      Plaintiffs' Discovery Efforts and Preparation for Class Certification ................... 8

        F.      Mediation Efforts, Settlement Negotiations, and Preliminary Approval of the
                Settlement ............................................................................................... 8

III.    THE RISKS OF CONTINUED LITIGATION .................................................. 9

IV.     THE SETTLEMENT IS ALSO FAIR AND REASONABLE CONSIDERING THE
        POTENTIAL RECOVERY OF DAMAGES ................................................... 11

V.      PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL
        ORDER REQUIRING ISSUANCE OF THE NOTICE .................................... 12

VI.     ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT .......... 14

VII.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES,
        REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY
        AWARDS TO PLAINTIFFS ............................................................................ 16

        A.      The Outcome Achieved Is the Result of the Significant Time and Labor that
                Plaintiffs' Counsel Devoted to the Action ........................................... 16

        B.      The Risks of Litigation and the Need to Ensure the Availability of Competent
                Counsel in High-Risk Contingent Securities Cases ............................. 17

        C.      The Experience and Expertise of Plaintiffs' Counsel, and the Standing and
                Caliber of Defendants' Counsel ........................................................... 18

        D.      The Reaction of the Settlement Class Supports Plaintiffs' Counsel's Fee
                Request .................................................................................................. 19

        E.      Plaintiffs Support Plaintiffs' Counsel's Fee Request............................ 19

        F.      The Requested Litigation Expenses Are Fair and Reasonable ............. 20

i

     G.     Compensatory Awards to Plaintiffs ........................................................................ 21

VIII.  CONCLUSION ............................................................................................................... 21

**TABLE OF EXHIBITS TO DECLARATION**

| EX. | TITLE |
|---|---|
| 1 | Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 2 | Declaration of Co-Lead Plaintiff Tianyou Wu in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs |
| 3 | Declaration of Co-Lead Plaintiff Alexander Yu in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs |
| 4 | Declaration of Co-Lead Plaintiff H. Marc Joseph in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs |
| 5 | Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses |
| 6 | Declaration of Reed R. Kathrein on Behalf of Hagens Berman Sobol Shapiro LLP Concerning Attorneys' Fees and Expenses |
| 7 | Declaration of Carol C. Villegas on Behalf of Labaton Keller Sucharow LLP Concerning Attorneys' Fees and Expenses |
| 8 | Table of Peer Law Firm Billing Rates |
| 9 | Chart of Select Eleventh Circuit Cases Awarding Attorneys' Fee of 33% or Above |

We, BRENDA SZYDLO and REED R. KATHREIN, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, as follows:

1.     I, Brenda Szydlo, am an attorney admitted to practice *pro hac vice* in this Court and a Partner at Pomerantz LLP ("Pomerantz"), Co-Lead Counsel for Co-Lead Plaintiffs Tianyou Wu, Alexander Yu, and H. Marc Joseph ("Plaintiffs") and the Settlement Class in the above-captioned action (the "Action").[1] Unless otherwise indicated, I have personal knowledge of the matters set forth herein based both on my extensive participation in the prosecution and settlement of the claims asserted in the Action and my supervision of those working at my direction. If called upon, I could and would competently testify that the following facts are true and correct.

2.     I, Reed R. Kathrein, am an attorney admitted to practice in this Court and a Partner at Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), Co-Lead Counsel for Plaintiffs and the Settlement Class in the above-captioned action. Unless otherwise indicated, I have personal knowledge of the matters set forth herein based both on my extensive participation in the prosecution and settlement of the claims asserted in the Action and my supervision of those working at my direction. If called upon, I could and would competently testify that the following facts are true and correct.

3.     Attached hereto are true and correct copies of Exhibits 1 through 9:

**Exhibit 1:** Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "Bravata Declaration" or the "Bravata Decl.");

**Exhibit 2:** Declaration of Co-Lead Plaintiff Tianyou Wu in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs (the "Wu Decl.");

**Exhibit 3:** Declaration of Co-Lead Plaintiff Alexander Yu in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs (the "Yu Decl.");

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated June 28, 2024 (the "Stipulation"). ECF No. 94-2.

**Exhibit 4:** Declaration of Co-Lead Plaintiff H. Marc Joseph in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs (the "Joseph Decl.");

**Exhibit 5:** Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses (the "Pomerantz Fee Declaration");

**Exhibit 6:** Declaration of Reed R. Kathrein on Behalf of Hagens Berman Sobol Shapiro LLP Concerning Attorneys' Fees and Expenses (the "Hagens Berman Fee Declaration");

**Exhibit 7:** Declaration of Carol C. Villegas on Behalf of Labaton Keller Sucharow LLP Concerning Attorneys' Fees and Expenses (the "Labaton Fee Declaration");

**Exhibit 8:** Table of Peer Law Firm Billing Rates; and

**Exhibit 9:** Chart of Select Eleventh Circuit Cases Awarding Attorneys' Fee of 33% or Above.

4.      We respectfully submit this declaration, together with the attached exhibits, in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and the incorporated memorandum in support thereof (the "Final Approval Memorandum"). As set forth in the Final Approval Memorandum, Plaintiffs seek final approval of the $3.75 million Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

5.      We also respectfully submit this declaration in support of Plaintiffs' Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs, and the incorporated memorandum in support thereof (the "Fee Memorandum"). As set forth in the Fee Memorandum, Plaintiffs' Counsel seeks an award of attorneys' fees in the amount of 33.4% of the Settlement Fund (or $1,252,500, plus interest at the same rate as the Settlement Fund), and reimbursement of litigation expenses in the total amount of $141,162.89. Plaintiffs' Counsel's also seeks compensatory awards to Plaintiffs in the aggregate amount of $9,000 (or $3,000 each for Lead Plaintiffs Tianyou Wu, Alexander Yu, and H. Marc Joseph) pursuant to the Private Securities Litigation Reform Act of 1995 ("PLSRA") for costs incurred in connection with their representation of the Settlement Class.

6.      The Court preliminarily approved the proposed Settlement by its Order entered on July 9, 2024 (the "Preliminary Approval Order"), and thereby directed notice of the Settlement to

2

be disseminated to the Settlement Class. *See* ECF No. 95. Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program whereby notice was given to potential Settlement Class Members by mail or email and by publication. *See* Ex. 1 (Bravata Decl.) ¶¶2-8.

7.      In total, as of September 18, 2024, a copy of the Notice was timely mailed or a link to the Notice and Claim Form was emailed, to approximately 193,702 potential Settlement Class Members. To date, not a single objection has been filed with the Court and no requests for exclusion have been received by Plaintiffs' Counsel or the Claims Administrator. *See* Ex. 1 (Bravata Decl.) ¶¶12-13. The deadline to submit an objection or a request for exclusion is October 2, 2024.

## I.      INTRODUCTION

8.      Plaintiffs in this action allege claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, arising from Defendants' alleged misrepresentations and omissions made during the Settlement Class Period from March 6, 2020 and August 19, 2020, both dates inclusive (the "Settlement Class Period").

9.      The proposed Settlement presented to the Court for final approval provides for the resolution of all claims in the Action in exchange for a cash payment of $3,750,000 (the "Settlement Amount") for the benefit of the Settlement Class. As detailed herein, Plaintiffs and Plaintiffs' Counsel submit that the proposed Settlement represents an extremely favorable result for the Settlement Class in light of the significant risks to overcome and remaining in the Action.

10.      Here, the total *maximum* damages available would be approximately $52.5 million. Thus, the $3,750,000 Settlement Amount represents approximately 7.1% of the total *maximum* damages *potentially* available.[2] A recovery of at least 7.1% of maximum damages is an excellent result for the Settlement Class. In fact, it exceeds the average recovery in similar situations. In 2023, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $50 million to $99 million was 3.8%, according to NERA Economic

---

[2] Plaintiffs' motion for preliminary of approval of the Settlement (ECF No. 94) stated that the Settlement Amount represented approximately 6.6% of the total maximum damages potentially available. However, the Settlement Amount actually represents 7.1% of the total maximum damages—an even more favorable result for the Settlement Class.

Consulting. *See* Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting, at 25 (Jan. 23, 2024), available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf.

11. Thus, the Settlement provides a substantial, certain, and immediate recovery, while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class could recover less than the Settlement Amount (or nothing at all) after years of additional litigation and delay.

12. The Settlement was only achieved after a hard-fought litigation, during which Plaintiffs' Counsel became well informed of the relative strengths and weaknesses of Plaintiffs' claims in the Action. In prosecuting the Action, Plaintiffs' Counsel expended great efforts and resources on behalf of the Settlement Class, including, *inter alia*,: (i) conducting an extensive legal and factual investigation of Defendants and their alleged violations of the securities laws; (ii) drafting two complaints including the comprehensive and factually detailed operative Complaint; (iii) opposing Defendants' motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (iv) identifying, retaining and working with a loss causation and damages expert; (v) propounded document requests and received production of documents prior to mediation; (vi) drafting a mediation brief containing detailed analyses of the strengths, risks, and potential issues in the litigation and participating in a full-day mediation session overseen by a well-respected neutral; (vii) worked with a market efficiency expert to prepare a supporting declaration for class certification as well as substantially drafting a class certification motion for filing just prior to the parties reaching the Settlement;  (viii) engaging in negotiations regarding the terms of the proposed Settlement; (ix) preparing the initial draft of the Stipulation and supporting documents; (x) working with Plaintiffs' consulting damages expert to craft the Plan of Allocation; (xi) oversaw the implementation of the notice process; and (xii) drafted the final approval motion and supporting papers.

13. Based on the foregoing efforts, Plaintiffs and Plaintiffs' Counsel are well informed of the strengths and weaknesses of the claims and defenses in the Action and believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of all Settlement Class Members. For all the reasons set forth herein and in the accompanying memorandum of law and declarations, Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is "fair,

reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Federal Rule of Civil Procedure 23(e).

14. In addition, Plaintiffs seek approval of the proposed Plan of Allocation as fair and reasonable. As discussed in further detail below, Plaintiffs' Counsel developed the Plan of Allocation with the assistance of their consulting damages expert. ¶¶52-59, *infra* (discussing Plan of Allocation). The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss. No Plaintiff, Settlement Class Member, or segment of the Settlement Class receives preferential treatment under the plan.

15. Finally, Plaintiffs' Counsel seeks approval of the request for attorneys' fees, reimbursement of litigation expenses, and compensatory awards to Plaintiffs, as set forth in the accompanying memorandum of law in support of such request (the "Fee Memorandum"). As discussed in the Fee Memorandum, the requested 33.4% fee is within the range of percentage awards granted by courts in this Circuit, and nationwide, in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check, and is warranted in light of the extent and quality of the work performed and the substantial result achieved. Likewise, the requested litigation expenses of $141,162.89 and the aggregate requested PSLRA award of $9,000 to Plaintiffs ($3,000 to each Plaintiff) are fair and reasonable. Accordingly, as set forth in the Fee Memorandum and for the additional reasons set forth herein, we respectfully submit that Plaintiffs' Counsel's request for attorneys' fees and reimbursement of litigation expenses, and compensatory awards to Plaintiffs is fair and reasonable and should be approved.

## II. PROSECUTION OF THE ACTION

### A. Background

16. According to the Company's SEC filings, Blink Charging Company ("Blink") is an owner, operator, and provider of electric vehicle ("EV") charging equipment and networked charging services. Blink offers both residential and commercial EV charging equipment, and its principal line of products and services are the Blink EV charging network (the "Blink Network"); EV charging equipment (also known as electric vehicle supply equipment); and EV related services.

17.     This securities class action arose from Defendants' allegedly false and misleading statements and omissions concerning the size and functionality of Blink's EV charging station network. Plaintiffs alleged that throughout the Class Period, in press releases and marketing materials, Defendants repeatedly promoted Blink's deployment of over 15,000 chargers at which EV drivers can "easily charge." In addition, Defendants frequently touted the advanced technical features of Blink's charging units, claiming the Company designed Blink equipment to combat planned obsolesce common with other EV equipment, thereby reducing the need for future upgrades as electric vehicle battery technology improves. In direct conflict with Defendants' claims that Blink's chargers were high-tech and in high demand, Blink's public charging station network was littered with obsolete and inoperable chargers, which the Company refused to service or replace. The decrepit condition of Blink's public charging stations resulted in a multitude of customer complaints, reduced revenue growth, missed sales, and damaged brand recognition. Plaintiffs alleged that Defendants' misrepresentations about the number and functionality of Blink's EV charging station network inflated the price of Blink's common stock, until research firm Culper Research published a report on August 19, 2020 (the "Culper Report"), claiming the Company had overstated the size of its charger network and that Blink had let many of its chargers fall into disrepair because the Company lacked the cash and manpower to maintain its equipment, causing the stock price to plummet.

**B.      Commencement of the Instant Action and Appointment of Lead Plaintiff and Lead Counsel**

18.     This securities class action was commenced on August 24, 2020, when plaintiff Richard M. Bush filed a complaint in this matter. ECF No. 1. On September 1, 2020, plaintiff Gina Vittoria filed a similar complaint in *Vittoria v. Blink Charging Co., et al.*, No. 20-cv-23643-KMW (S.D. Fla. Sept. 1, 2020).

19.     On September 30, 2020, Bush and Defendants filed a Joint Motion to Consolidate (ECF No. 14), which the Court granted (ECF No. 18).

20.     Thereafter, on December 21, 2020, the Court appointed Tianyou Wu, Alexander Yu, and H. Marc Joseph as Co-Lead Plaintiffs, and Pomerantz LLP and Hagens Berman Sobol Shapiro LLP as Co-Lead Counsel. ECF No. 29.

**C.      The Comprehensive Pre-Filing Investigation and Preparation of the Complaint**

21.      Lead Counsel conducted an extensive and detailed pre-filing investigation of Defendants, which included, among other things: (i) review and analysis of the Company's SEC filings, press releases, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Blink, and publicly available documents, reports, announcements, and news articles concerning Blink and the Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (iii) consultation with an expert in market efficiency, loss causation, and damages.

22.      On February 19, 2021, Plaintiffs filed the operative Complaint asserting claims against all Defendants under Exchange Act §10(b) and Rule 10b-5 for material misstatements, and against the Individual Defendants Michael D. Farkas and Michael P. Rama under §20(a) as control-persons of Blink. Specifically, Plaintiffs alleged that Defendants (i) made or caused to be made a series of materially false and/or misleading statements about the size and functionality of Blink's electric vehicle charging station network—*i.e.*, the Blink Network; (ii) these material misstatements and/or omissions created an unrealistically positive assessment of Blink and its business, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares; and (iii) Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices. ECF No. 40.

**D.      Blink's Motion to Dismiss the Complaint**

23.      Defendants moved to dismiss the Complaint on April 20, 2021 (ECF No. 47), arguing among other things, that the (i) Complaint failed to adequately allege that the representations about Blink's Network were false or misleading, (ii) Plaintiffs failed to plead particularized facts giving rise to the requisite inference of scienter; and (iii) Plaintiffs failed to adequately plead loss causation. *Id.* Plaintiffs filed their opposition to the motion to dismiss on June 21, 2021 (ECF No. 48), and Defendants filed their reply on July 21, 2021 (ECF No. 54).

7

24.     The Court held oral argument on April 7, 2022 (ECF No. 57), and on November 27, 2023, the Court granted in part, and denied in part, Defendants' motion to dismiss the Complaint. *See Bush v. Blink Charging Co.*, 2023 WL 8263037 (S.D. Fla. Nov. 27, 2023). While the Court dismissed Plaintiffs' allegations that Defendants materially misrepresented the size of the Blink Network, the Court held that Plaintiffs adequately alleged that Defendants made materially false and misleading statements regarding the functionality of Blink's network. *Id.* at *6-8.

### E.     Plaintiffs' Discovery Efforts and Preparation for Class Certification

25.     After surviving the motion to dismiss, Plaintiffs began discovery efforts.  Plaintiffs prepared and served initial disclosures on February 9, 2024. On February 9, 2024, Plaintiffs served fifty-eight (58) requests for production on Defendants.  Defendants served their responses on March 20, 2024.  The parties eventually negotiated, and Plaintiffs received a document production of Board meeting minutes prior to the mediation. The parties were prepared to continue their meet and confer efforts had the case not settled.

26.     In addition, the case scheduled entered by the Court set a deadline of April 19, 2024 for Plaintiffs to move for class certification.  Plaintiffs research and drafted a motion for class certification and prepared an accompanying expert declaration addressing market efficiency when the parties reached a preliminary settlement agreement on April 19, 2024.

### F.     Mediation Efforts, Settlement Negotiations, and Preliminary Approval of the Settlement

27.     On April 3, 2024, Lead Counsel and Defendants' Counsel participated in a full-day virtual mediation session before Jed Melnick, Esq. In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of liability and damages. A mediator's recommendation was made shortly after the mediation which culminated in an agreement in principle to settle the Action for $3.75 million in cash on April 19, 2024. The Parties thereafter worked diligently to finalize the Settlement, which involved numerous complex terms and other issues that required substantial negotiation among the Parties. The terms of the Settlement are memorialized in the June 28, 2024 Stipulation. ECF No. 94-2.

28.     On July 9, 2024, the Court issued its Order Preliminarily Approving Settlement and Providing for Notice. ECF No. 95. The Order preliminarily approved the Settlement, conditionally

certified the Settlement Class for settlement purposes only, appointed Plaintiffs as Class Representatives, appointed Lead Counsel as Class Counsel, approved the proposed procedure to provide notice of the Settlement to potential Settlement Class Members, and set October 23, 2024, as the date for the final-approval hearing. *Id.* The Settlement Class is defined as:

> all Persons and entities that purchased or otherwise acquired Blink securities between March 6, 2020 and August 19, 2020, inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of Blink, at all relevant times, members of their Immediate Family and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

## III.   THE RISKS OF CONTINUED LITIGATION

29.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $3,750,000. As explained in detail below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case proceeded through additional years of litigation. Defendants also had or potentially had substantial arguments with respect to materiality, scienter, loss causation, and damages in this case. These risks, among many others, were carefully considered in evaluating whether the Settlement was in the Settlement Class's best interests. There was simply no guarantee that Plaintiffs and the Settlement Class would achieve any recovery, let alone one greater than $3.75 million.

30.     Plaintiffs and Plaintiffs' Counsel would face numerous risks at summary judgment, and trial, including establishing Defendants' liability. Defendants forcefully argued in their motions to dismiss – and undoubtedly would have continued to argue at summary judgment and/or trial – that Plaintiffs would not have been able to establish the elements of their claims under the Exchange Act. Plaintiff would have to prevail on materiality, scienter, loss causation, and damages at trial, as well as the inevitable appeals that would follow, before they recovered anything.

31.     An example of one risk is that Plaintiffs would have confronted considerable challenges in establishing loss causation and damages.

32.     Plaintiffs alleged that the Culper Report was a corrective disclosure that contradicted Defendants' representations regarding the size and functionality of chargers

connected to the Blink Network. Defendants contended that the Culper Report failed to correct any of Defendants representations and do not amount to "corrective disclosures" sufficient to establish loss causation under the Exchange Act. Defendants asserted that the temporary decline of Blink's stock price in August 2020 was caused by the self-serving publication of derogatory allegations in the Culper Report that accomplished its intended purpose – to convince others to sell their Blink stock. Defendants argued that because Plaintiffs did not sufficiently allege that some misstatement or omission by Defendants, as opposed to the information in the intervening Culper Report, was the proximate cause of Blink's temporary stock price decline, Plaintiffs failed to plead loss causation.

33.     In order to prove loss causation and damages, Plaintiffs would need to proffer expert testimony demonstrating: (i) what the "true value" of Blink's Securities would have been had there been no alleged material misstatements and omissions; (ii) the amount by which Blink Securities were inflated by the alleged material misstatements and omissions; and (iii) the amount of artificial inflation removed by the disclosures. Defendants would almost certainly present their own damages expert(s) to present conflicting conclusions and theories regarding the reasons for the Blink Securities price decline on the alleged disclosure date.

34.     Moreover, expert testimony can often rest on many assumptions, any of which risks being rejected by a jury. A jury's reaction to such expert testimony is highly unpredictable, and Plaintiffs' Counsel recognized that, in such a "battle of the experts," there is the possibility that a jury could be swayed by Defendants' expert(s) and could find only a fraction of the amount of damages Plaintiffs contended were suffered by the Settlement Class. Thus, the amount of damages that the Settlement Class would recover at trial, even if successful on liability issues, was uncertain. Similarly, there was no assurance that any evidentiary documents and testimony relating to liability and damages could be obtained or would be admitted as evidence by the Court at trial. These issues could have seriously affected Plaintiffs' ability to successfully prosecute the allegations in this case.

35.     In sum, had any of Defendants' loss causation and damages arguments been accepted at summary judgment or trial, they could have dramatically limited—if not eliminated— any potential recovery.

36.     Defendants would also have argued against class certification. The Parties reached the Settlement before Plaintiffs filed a motion for class certification. While Lead Counsel is

confident that all of the Rule 23 requirements would have been met, and that the Court would have certified the proposed class, Defendants would have undoubtedly raised arguments challenging the propriety of class certification. If the Court accepted any of Defendants' anticipated arguments in opposition to class certification, that would have created significant hurdles for the proposed class to overcome.

37. It is also noteworthy that Plaintiffs' hard work led to a relatively early procedural settlement. Had the case not settled, Plaintiffs would have needed to complete substantial discovery, including (i) reviewing and analyzing documents produced by Blink, the Individual Defendants, and other relevant third parties; and (ii) taking fact depositions and conducting all expert discovery—the costs of which are assuredly high and the fruits of which are largely uncertain. Plaintiffs also would have had to prevail at multiple stages in the litigation—motion for summary judgment, at trial and on the appeals that were likely to follow—if they were to collect anything. There was substantial risk at each of these stages, and even a victory at trial does not guarantee a recovery.

38. Lead Counsel know from experience that despite the most vigorous and competent efforts, attorneys' success in contingent litigation such as this is never assured. And, even if Plaintiffs had prevailed at all stages, they would have had to succeed on the post-trial appeals that would have surely followed. This process could have extended for years and might have ultimately led to a smaller recovery—or no recovery at all. Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $3.75 million Settlement.

39. Given these significant litigation risks, Plaintiffs and Plaintiffs' Counsel believe that the Settlement represents an excellent result for the Settlement Class.

## IV.   THE SETTLEMENT IS ALSO FAIR AND REASONABLE CONSIDERING THE POTENTIAL RECOVERY OF DAMAGES

40. In addition to the attendant risks of litigation discussed above, the Settlement is also fair and reasonable considering the potential recovery of available damages. If Plaintiffs had fully prevailed on all of their claims, at summary judgment, and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to the stock price drop date alleged in this case—*i.e.*, Plaintiffs' best-case scenario—estimated total maximum damages would be

11

approximately $52.5 million. Thus, the $3.75 million Settlement Amount represents approximately 7.1% of the total maximum damages potentially available in this Action.

41.     Plaintiffs, taking the above information into account, also recognize that there are significant risks to recovering the maximum estimated damages.

42.     Having evaluated the relative strengths and weaknesses of the Action in light of Defendants' arguments, the stage of the litigation, and continued risk of litigation, it is the informed judgment of Plaintiffs' Counsel, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

## V.     PLAINTIFFS' COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE

43.     The Court's Preliminary Approval Order (ECF No. 95) directed that the Notice be disseminated to the Settlement Class. The Preliminary Approval Order also set a deadline of October 2, 2024: (i) for the receipt of objections to the Settlement, Plan of Allocation and/or the application for attorneys' fees, expenses, and/or compensatory to Plaintiffs; and (ii) to request exclusion from the Settlement Class. Additionally, the Preliminary Approval Order set a final fairness hearing date of October 23, 2024 (the "Settlement Hearing").

44.     Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel instructed SCS, the Court-approved Claims Administrator, to begin mailing and emailing notice of the Settlement and to publish the Summary Notice. Contemporaneously with the mailing and/or emailing of the Notice and Claim Form, Plaintiffs' Counsel instructed SCS to post downloadable copies of the Notice and Claim Form online at www.strategicclaims.net/Blink/ (the "Settlement Website"). Upon request, SCS mailed and/or emailed copies of the Notice and/or Claim Form to Settlement Class Members and will continue to do so until the December 4, 2024 deadline to submit a Claim Form has passed.

45.     The Notice contains, among other things, (i) a description of the Action; (ii) the definition of the Settlement Class; (iii) a summary of the terms of the Settlement and the proposed Plan of Allocation; (iv) a description of Settlement Class Members' right to participate in the Settlement; (v) a description of the Settlement Class Members' right to object to the Settlement, the Plan of Allocation and/or the application for attorneys' fees, expenses, and/or compensatory awards to Plaintiffs; and (vi) a description of the Settlement Class Members' right to exclude themselves from the Settlement Class. The Notice also informs Settlement Class Members of

12

Plaintiffs' Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Fund (plus interest), for reimbursement of litigation expenses in an amount not to exceed $185,000 (plus interest), and for reimbursement of the reasonable costs and expenses incurred by Plaintiffs directly related to their representation of the Settlement Class in an amount not to exceed $9,000 in the aggregate (or $3,000 each). *See* Bravata Decl., Ex. A (Notice) at ¶5.

46.    To disseminate the Notice, Plaintiffs' Counsel requested the names and addresses of record holders of Blink Securities that are potential Settlement Class Members. Plaintiffs' Counsel in turn, provided these transfer records to SCS and SCS disseminated 23 copies of the Notice to each of these potential Settlement Class Members by first-class mail and/or email on July 22, 2024. *See* Bravata Decl., ¶6.

47.    In addition, SCS maintains a proprietary database with the names and addresses of the largest and most common banks, brokers, and other nominees. *See id.* at ¶5. On July 19, 2024, SCS caused a letter to be sent by First-Class Mail and/or emailed to the 2,302 nominees contained in the SCS master mailing list. *Id.* The letter notified the nominees of the Settlement and requested that, within 7 calendar days from the date of the letter, they either (a) send a Notice to their customers who may be beneficial purchasers/owners; (b) email a link to the Notice and Claim Form to their customers who may be beneficial purchasers/owners; or (c) provide SCS with a list of names, mailing addresses or email addresses of such beneficial owners so that SCS could promptly provide notice to them. *Id.* at ¶5.

48.    As of September 18, 2024, 193,702 potential Settlement Class Members were notified either by mailed Notice or were emailed a link to the Notice and Claim Form. *Id.* at ¶8.

49.    On August 19, 2024, in accordance with the Preliminary Approval Order, SCS caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. *See id.* at ¶9.

50.    Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on July 19, 2024. The Settlement Website provides potential Settlement Class Members with information concerning the Settlement, submitting a claim online, downloading copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and other relevant documents. *Id.* at ¶11.

51.     The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the application for attorneys' fees, expenses, or compensatory awards to Plaintiffs, or to request exclusion from the Settlement Class is October 2, 2024. To date, no requests for exclusion have been received. *Id.* at ¶12. SCS will file a supplemental declaration after the deadline addressing whether any requests for exclusion have been received. To date, no objections to the Settlement, the Plan of Allocation, or the application for attorneys' fees, expenses, or compensatory awards to Plaintiffs has been entered on this Court's docket, or has otherwise been received by Plaintiffs' Counsel. Plaintiffs' Counsel will file reply papers by October 16, 2024, that will address any objections that may be received.

## VI.     ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

52.     Pursuant to the Preliminary Approval Order (ECF No. 95), and as set forth in the Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $3.75 million Settlement Amount plus any and all interest earned thereon less: (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any attorneys' fees awarded by the Court; (iv) any litigation expenses awarded by the Court; and (v) compensatory awards to Plaintiffs for their costs and expenses incurred in representing the Settlement Class) must submit a valid Claim Form with all the required information submitted online or postmarked no later than December 4, 2024. *See* Bravata Decl. Ex. A (Notice ¶32). The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, subject to Court-approval.

53.     The Plan of Allocation is detailed in the Notice. *See id.* Ex. A (Notice at 7-10). The Notice is posted on the Settlement Website, is downloadable, and upon request, will be mailed to any potential Settlement Class Members. The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered losses as a proximate result of the alleged violations of the Exchange Act as opposed to losses caused by market, industry, or Company-specific factors unrelated to the alleged violations of law. Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on his, her, or its total Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants. *See id.* Ex. A (Notice ¶59). As described in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a

14

trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. *Id.* at ¶¶43-45.

54.     The Plan of Allocation, developed by Plaintiffs' consulting damages expert in conjunction with Plaintiffs' Counsel, is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Plaintiffs contend could have been recovered under the theories of liability and damages asserted in the Action. More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' allegation that the price of Blink's common stock was artificially inflated due to Defendants' materially false and misleading statements and omissions.

55.     The Plan of Allocation is based on the premise that the decreases in the price of Blink Securities that followed the alleged corrective disclosure may be used to measure the alleged artificial inflation in the price of Blink Securities prior to these disclosures.

56.     An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including when the Claimant purchased, acquired, or sold Blink Securities during the Settlement Class Period, in what amounts, and if any securities were sold, when they were sold and in what amounts, as well as the number of valid claims filed by other Claimants.

57.     If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater. In Plaintiffs' Counsel's experience, processing and sending a check for less than $10.00 is cost prohibitive.

58.     In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund fairly among Settlement Class Members based on the losses they suffered on transactions in Blink Securities that were attributable to the conduct alleged in the Complaint. Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Plaintiffs prevailed at trial.

59.     To date, no objections to the proposed Plan of Allocation have been received by Lead Counsel or filed on the Court's docket.

15

**VII.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS**

60.    In addition to seeking final approval of the Settlement and Plan of Allocation, Plaintiffs' Counsel are applying for a fee award of 33.4% of the Settlement Fund (*i.e.*, $1,252,500 plus interest accrued thereon). Plaintiffs' Counsel is also requesting reimbursement in the amount of $141,162.89 for out-of-pocket expenses incurred by Plaintiffs' Counsel in connection with the prosecution and resolution of the Action. Notably, the requested litigation expenses of $141,162.89 are below the maximum amount of $185,000 set forth in the Notice. Additionally, Plaintiffs' Counsel is requesting PSLRA awards of $3,000 each to Plaintiffs for their costs incurred in connection to their roles as class representatives in the Action.

61.    As set forth in the accompanying Fee Memorandum, the requested 33.4% award is well within the range of fee awards in other comparable class action settlements, and the resulting fractional (or negative) multiplier on Plaintiffs' Counsel's lodestar of approximately 0.91 strongly supports the reasonableness of the requested attorneys' fee. The legal authorities supporting the requested fees and expenses are set forth in the concurrently filed Fee Memorandum. The primary factual bases for the requested fees and expenses are set forth below.

**A.    The Outcome Achieved Is the Result of the Significant Time and Labor that Plaintiffs' Counsel Devoted to the Action**

62.    The work undertaken by Plaintiffs' Counsel in investigating and prosecuting the Action and arriving at the present Settlement in the face of substantial risks has been time-consuming and challenging. At all times throughout the pendency of the Action, for approximately four years, Plaintiffs' Counsel's efforts were driven and focused on advancing the Action to bring about the most successful outcome for the Settlement Class, whether through settlement or trial. That work is summarized in ¶12 above.

63.    Moreover, Plaintiffs' Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval. No additional compensation will be sought for this work.

64.    As set forth in Exhibits 5-7, respectively, Plaintiffs' Counsel expended a combined 1,937.82 hours prosecuting this Action, for a collective total lodestar of $1,364,065, as reflected below:

16

| LAW FIRM | LODESTAR |
|---|---|
| Pomerantz LLP | $738,981.00 |
| Hagens Berman Sobol Shapiro LLP | $590,347.50 |
| Labaton Keller Sucharow LLP | $34,736.50 |
| **TOTAL LODESTAR** | **$1,364,065.00** |

65. The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation. Additionally, the rates billed by Plaintiffs' Counsel (ranging from $800-$1,200 per hour for partners and $500-650 per hour for all other attorneys) are comparable to peer plaintiff firms litigating matters of similar magnitude. *See* Ex. 8 (Table of Peer Law Firm Billing Rates).

66. Based on the work performed and the quality of the results achieved, Plaintiffs' Counsel respectfully submits that a 33.4% fee is fully merited under the "percentage of the fund" methodology. Furthermore, as set forth below, though not required in the Eleventh Circuit, Plaintiffs' Counsel also respectfully submit that the requested fee is fully supported by a "lodestar multiplier cross-check."

67. The requested 33.4% attorneys' fee (which equates to $1,252,500), plus interest at the rate earned by the Settlement Fund, represents a 0.91 lodestar multiple compared to the base lodestar value of counsel's time. As shown in Plaintiffs' Counsel's accompanying Fee Memorandum, such a multiplier is below the range of multipliers that courts often award in complex securities class actions, and a negative (or fractional) multiplier is a strong indication that the percentage request is fair and reasonable.

68. Plaintiffs' Counsel's substantial efforts resulted in the significant Settlement obtained for the benefit of the Settlement Class and, accordingly, this factor weighs strongly in favor of the requested 33.4% award of attorneys' fees.

**B.     The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases**

69. This prosecution was undertaken by Plaintiffs' Counsel on a pure contingency fee basis. From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Plaintiffs'

17

Counsel were obligated to ensure that sufficient resources were dedicated to cover the considerable litigation costs required for a case such as this.

70.     With an average lag time of years for complex cases such as this to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Plaintiffs' Counsel received no compensation during more than four years of litigation and incurred $141,162.89 in litigation-related expenses in prosecuting the Action.

71.     Plaintiffs' Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery at all. Despite the most vigorous and competent of efforts, success in contingent-fee litigation like this is never assured. Plaintiffs' Counsel knows from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels. And, even when that effort is put forth, sometimes plaintiffs fail.

72.     Moreover, courts have repeatedly recognized that it is in the public's interest to have experienced and able counsel enforce the securities laws and regulations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("private securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets.") (internal quotation marks omitted). As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

**C.     The Experience and Expertise of Plaintiffs' Counsel, and the Standing and Caliber of Defendants' Counsel**

73.     As demonstrated by the Lead Counsel's firm resumes, Lead Counsel have extensive and significant experience in the specialized area of securities litigation. *See* ECF Nos. 22-1, 24-5. (Lead Counsel Firm Resumes). The attorneys who were principally responsible for leading the prosecution of this case have prosecuted securities claims throughout their careers and have recovered tens of millions of dollars on behalf of investors. This experience allowed Plaintiffs'

18

Counsel to develop and implement litigation strategies to address the complex obstacles that are inherent in securities class actions and those specific to this case that were raised by Defendants. We believe that the recovery achieved here for the Settlement Class reflects the high quality of Plaintiffs' Counsel's representation.

74.     Additionally, the quality of the work performed by Plaintiffs' Counsel in obtaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Defendants were represented by Holland & Knight LLP—a well-respected law firm that vigorously represented the interests of their clients throughout this Action. In the face of this experienced and formidable opposition, Plaintiffs' Counsel were nonetheless able to persuade Defendants to settle the case on terms favorable to the Settlement Class.

### D.      The Reaction of the Settlement Class Supports Plaintiffs' Counsel's Fee Request

75.     As noted above, as of September 18, 2024, approximately 193,702 Notices or links to the Notice and Claim Form have been disseminated advising Settlement Class Members that Plaintiffs' Counsel would apply for an award of attorneys' fees in an amount not to exceed 33.4% of the Settlement Fund. *See* Bravata Decl. ¶8. In addition, the Court-approved Summary Notice has been published in *Investor's Business Daily* and transmitted once over the *PR Newswire*. *Id.* ¶9. To date, no objections to the attorneys' fees maximum set forth in the Notice have been received by Plaintiffs' Counsel or entered on this Court's docket. Any objections received after the date of this filing will be addressed in Plaintiffs' Counsel's reply papers to be filed on October 16, 2024.

76.     In sum, Plaintiffs' Counsel accepted this case on a fully contingent basis, committed significant resources, and prosecuted the case for more than four years without any compensation or guarantee of success. Based on the result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, Plaintiffs' Counsel respectfully submit that a fee award of 33.4%, resulting in a fractional multiplier of 0.91, is fair and reasonable, and is supported by the fee awards courts have granted in other class action securities litigation.

### E.      Plaintiffs Support Plaintiffs' Counsel's Fee Request

77.     As set forth in Plaintiffs' declarations, Plaintiffs have concluded that Plaintiffs' Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained

for the Settlement Class, and the risks of the Action. *See* Ex. 2 (Wu Decl.) at ¶¶9-11; Ex. 3 (Yu Decl.) at ¶¶9-11; Ex. 4 (Joseph Decl.) at ¶¶9-11. Plaintiffs have been actively involved in this case since its early stages, and their endorsement of Plaintiffs' Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

### F.        The Requested Litigation Expenses Are Fair and Reasonable

78.        Plaintiffs' Counsel seeks reimbursement of litigation expenses in the amount of $141,162.89, plus interest. Pomerantz has incurred $33,659.42, Hagens Berman has incurred $104,872.89 and Labaton Keller Sucharow LLP ("Labaton") has incurred $2,630.58 in litigation expenses in connection with the prosecution of this Action. *See* Ex. 5 ¶8; Ex. 6 ¶8; Ex. 7 ¶8. The total expenses of Plaintiffs' Counsel are $141,162.89. These expenses were reasonable and necessary for the prosecution of the Action.

79.        From the outset, Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement of expenses would not compensate them for the lost use of funds they advanced to prosecute this Action. Thus, Plaintiffs' Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

80.        A listing of the expenses incurred by Pomerantz compiled from its regularly maintained records, are set forth in the Pomerantz Fee Declaration. *See* Ex. 5 ¶¶8-9, Ex. B. A listing of the expenses incurred by Hagens Berman compiled from its regularly maintained records, are set forth in the Hagens Berman Fee Declaration. *See* Ex. 6 ¶¶8-9, Ex. B. A listing of the expenses incurred by Labaton compiled from its regularly maintained records, are set forth in the Labaton Fee Declaration. *See* Ex. 7 ¶¶8-9, Ex. B. The expenses incurred pertaining to this case are reflected in the books and records of Pomerantz, Hagens Berman, and Labaton, and are believed to be an accurate record of the expenses incurred in the Action.

81.        Litigation expenses for which Plaintiffs' Counsel seeks reimbursement include expert consultant fees, investigator fees, mediator fees, legal research fees, transportation fees, and filing fees, among others. Each of these expenses were reasonable and necessary for the successful prosecution of this Action. The damages expert performed a damages analysis so that Plaintiffs'

Counsel could properly evaluate the damages in connection with this litigation, as well as negotiate the Settlement. The class certification expert performed a market efficiency analysis so Plaintiffs could present the strongest possible case for class certification (although ultimately the motion was never filed due to the Settlement).

82.     In light of the complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class. Thus, Plaintiffs' Counsel respectfully requests reimbursement of $141,162.89, plus interest, for the litigation expenses incurred during the prosecution of this Action.

### G.     Compensatory Awards to Plaintiffs

83.     Finally, Lead Plaintiffs Tianyou Wu, Alexander Yu, and H. Marc Joseph seek reimbursement of their reasonable costs and expenses incurred directly in connection with representing the Settlement Class in the amount of $3,000 each. The substantial effort devoted to this Action by Plaintiffs is detailed in their accompanying declarations and described in the Fee Memorandum. *See* Ex. 2 (Wu Decl.) at ¶¶3-6; Ex. 3 (Yu Decl.) at ¶¶3-6; Ex. 4 (Joseph Decl.) at ¶¶3-6; *see* Fee Memorandum at 16-17. Based on the time and effort expended by Plaintiffs for the benefit of the Settlement Class, we would respectfully request that the Court grant Plaintiffs' request in full.

## VIII.   CONCLUSION

84.     In view of the significant recovery for the Settlement Class and the substantial risks of this Action, as described herein and in the accompanying Final Approval Memorandum, we respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable. As described herein and in the accompanying Fee Memorandum, we further submit that (i) the requested fee in the amount of 33.4% of the Settlement Fund, plus interest, should be approved as fair and reasonable; (ii) the request for reimbursement of total litigation expenses in the amount of $141,162.89, plus interest, should be approved; and (iii) the request for compensatory awards to Plaintiffs in the aggregate amount of $9,000 ($3,000 each) should also be approved.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this, the 18th day of September, 2024, at New York, New York.

*/s/ Brenda Szydlo*
Brenda Szydlo

Executed on this, the 18th day of September, 2024, at Berkeley, California.

*/s/ Reed R. Kathrein*
Reed R. Kathrein
